## F. Behrends, Defendant in Error, v. Chicago, Rock Island & Pacific Railway Company, Plaintiff in Error.

### Gen. No. 21,090.

1. CARRIERS, § 243*—*when bill of lading limiting liability for delay in shipment of live stock not effectual.* A bill of lading limiting the liability of the carrier for damages for delay in shipment of live stock in order to be binding, must be delivered to the shipper at the time the stock is accepted for carriage, unless there is an agreement that it shall be delivered at a future time.

2. CARRIERS, § 248*—*when evidence sufficient to sustain finding as to damages for delay in shipment of live stock.* In suit by shipper of cattle against a railroad on account of unreasonable delay in shipment and mixture while in transit with other cattle, evidence of plaintiff's damages *held* sufficient to sustain finding and judgment in his favor.

3. CARRIERS, § 250a*—*what is measure of damages for delay in shipment of live stock.* Unless otherwise legally limited by the contract of carriage, the measure of damages for delay in shipment of live stock is the difference between the market value of the consignment at the time and in the condition it should have arrived and its fair, cash market value in the condition and the time it actually arrived at its destination, plus the necessary expenses caused to the shipper by the delay.

Error to the Municipal Court of Chicago; the Hon. JACOB H. HOPKINS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed March 9, 1916.

M. L. BELL and A. B. ENOCH, for plaintiff in error.

FULTON, GAREY & DEUTSCHMAN, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This action was commenced in the Municipal Court of Chicago on February 17, 1913. In plaintiff's amendment to his original statement of claim, filed April

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

24, 1913, it is stated that plaintiff's claim is "for money damages incurred to a shipment of 22 calves; 6 cows, very good; 6 cows, medium; 3 heifers, fat; and 3 steers, fat; the property of plaintiff shipped from Conger, Minnesota, on, to-wit, March 30, 1912, via said defendant, to Chicago, Illinois, arriving thereat on, to-wit, April 2, 1912; said damage being incurred by reason of the unreasonable delay in said transit and by reason of the negligence of said carrier during said transit in that said defendant allowed said stock to become mixed during said transit." To this defendant filed an affidavit of merits in which it was denied that there was any unreasonable delay in transit or that any damages were suffered by plaintiff by reason thereof, or that it was guilty of any negligence, or that said stock had become mixed during transit. Subsequently defendant filed an amendment to its affidavit of merits in which it was alleged that the said shipment of stock moved under a *written* contract, entered into between plaintiff and defendant, known as a "Live Stock Contract," and that in said contract it was provided, *inter alia,* that the live stock was not to be transported in any specified time or in season for any particular market; that as a condition precedent to the recovery for any loss or injury or detention the shipper should promptly give written notice of such loss or injury to some agent of the company before said stock be removed from the cars or mingled with other stock, which notice should be served within one day after the delivery of the stock at its destination, and that no suit should be instituted more than six months after the cause of action accrued. It was further alleged that plaintiff had not served the written notice referred to in said contract and that no suit had been commenced within said six months.

The cause was tried before the court without a jury. The depositions of plaintiff and two of his witnesses were read in evidence. One F. S. Boothroyd, engaged

in the live stock commission business at the Union Stock Yards, Chicago, also testified as plaintiff's witness in open court. No evidence whatsoever was introduced by defendant concerning the shipment of March 30, 1912, in question. The court found the issues against defendant and assessed plaintiff's damages at $129.50, upon which finding judgment was entered.

It is contended by counsel for defendant that the court erred in entering any judgment in favor of plaintiff for the reason that it appears from plaintiff's testimony that a written contract or bill of lading was signed by plaintiff which was not introduced in evidenced by *plaintiff*. In support of their contention counsel rely upon the case of *Kitza v. Oregon Short Line R. Co.*, 169 Ill. App. 609. It appears from the opinion in that case that the shipper of the sheep in question had signed a written contract or bill of lading, after reading the same, at the time of the making of the shipment and *before* the transit of the sheep had commenced. It was *held* that the burden of proof was upon the *shipper* to prove the *written* contract upon which the shipment was made, and that failing to do this he could not recover upon an alleged *verbal* contract which did not exist, the same having been superseded by said *written* contract. In the present case it appears from the uncontradicted testimony of plaintiff that before March 30, 1912, he had made arrangements with the agent of defendant, at Conger, Minnesota, for the shipment of the cattle on that day; that he himself loaded the cattle in the cars on March 30, 1912, and that the loading was completed by 9 o'clock on the evening of that day and the cattle were then ready to start; that after said loading was completed he for the first time heard that a dam near a bridge at Albert Lea, Minnesota, had broken down and that a flood was impending which might delay the transit of the cattle; that said agent of defendant then

wanted him "to sign a paper," which he refused to do, saying that he "wouldn't be responsible if anything happened down there," and that said agent told him that the cattle would be carried forward immediately that evening; and that about *two weeks after* the cattle had been shipped and after plaintiff had made a claim against defendant for damages on said shipment said agent requested him to sign some sort of a contract, which he did, after said agent had stated to him that his signing it would make no difference and that he would get his claim anyway.  Under the facts as disclosed we do not think there is any merit in counsel's contention or that the ruling in the *Kitza* case, *supra,* is applicable.  "To make the terms and conditions of the receipt effectual in limiting the liability of the carrier, it must be delivered to the shipper of the goods at the time they are accepted for carriage, unless there is an agreement that it shall be delivered at some future time."  (Hutchinson on Carriers, 3rd Ed., sec. 416; see also, *Gemberling v. Grand Trunk Western Ry. Co.,* 192 Ill. App. 53, 56; *Gamble-Robinson Commission Co. v. Union Pac. R. Co.,* 262 Ill. 400, 405.)

It is also contended that plaintiff's evidence as to damages is not certain enough to sustain the judgment or any judgment against defendant.  It appears from the evidence that the cattle arrived at the Union Stock Yards in Chicago at 11 o'clock on Tuesday morning, April 2, 1912, and were there unloaded.  There was evidence tending to show that a reasonable time for a shipment of cattle to move from Conger to Chicago was about thirty-five hours, and that cattle leaving Conger at 9 o'clock on the evening of Saturday, March 30, 1912, would usually arrive in Chicago at or shortly before 8 o'clock on the morning of April 1, 1912. There was also evidence introduced as to shrinkage. "Unless otherwise legally limited by the contract to carry, the measure of damages by reason of a delayed shipment is the difference between the market value

of the consignment at the time and in the condition it should have arrived and its fair, cash market value in the condition and at the time it actually did arrive at its destination, * * * plus the necessary expenses to the shipper caused by the unusual delay." (*Idaho Sheep Co. v. Oregon Short Line R. Co.*, 188 Ill. App. 591, 599.) There was also evidence tending to show that during the transit the cattle became mixed with other cattle and that some of the cattle received in Chicago were not the same as shipped from Conger and inferior to those as shipped. Without further discussion of the evidence we deem it sufficient to say that, in our opinion, the evidence as to plaintiff's damages was sufficient to sustain a finding and judgment in his favor in the amount, at least, of the finding and judgment as rendered.

    The judgment of the Municipal Court is affirmed.

*Affirmed.*