**RABB, FRANKLIN NATIONAL INSURANCE CO., Plaintiffs-Appellants, v. RAILWAY EXPRESS AGENCY INC., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21846.   Decided October 30, 1950.

Miller, Davis & Folk, Cleveland, for plaintiffs-appellants.
Burgess, Fulton & Fullmer, Cleveland, for defendant-appellee.

## OPINION

By McNAMEE, J:

On June 7, 1946, plaintiff appellant, Ida Rabb, delivered a mink coat which she owned, to the defendant appellee, Railway Express Agency, Inc., for shipment to Schulman & Menzoff of New York City. The coat, apparently lost or stolen in transit, was not delivered to the consignee. Plaintiff appellant, Franklin National Insurance Company, the insurer of the coat, paid Mrs. Rabb the face amount of its policy of $1800.00. Thereafter both appellants instituted suit in Common Pleas Court against the defendant Express Company to recover the full value of the coat which plaintiffs claim was $3800.00.

Defendant admits receipt of a package for shipment and its failure to deliver to the consignee. Defendant also claims that its liability was limited to the declared or released value of $100.00. The jury returned a verdict of $100.00 in favor of plaintiffs upon which judgment was rendered.

This appeal upon questions of law is predicated upon two assigned errors: (1) that the trial court erred in charging the jury that it might find for plaintiff in the sum of $100.00, whereas it ought to have instructed the jury to find for plaintiffs for the full value of the coat. (2) Other errors in the charge of the court.

Under the facts as developed by the evidence, the principal issue to be determined is whether the defendant was entitled to have a jury consider its asserted defense of limited liability.

The record discloses that in 1943 Ida Rabb purchased a mink coat in New York City at the wholesale price of $1800.00 The coat was thereafter insured by her with The Franklin National Insurance Company for the amount of the purchase price. On June 7, 1946 Mrs. Rabb delivered the coat to her husband, Ben P. Rabb, for shipment to Schulman & Menzoff of New York City for cleaning and summer storage. The coat was enclosed in a box and addressed to the consignee in New York City. Mr. Rabb, an attorney, took the coat to his office in the Society for Savings Building and instructed his secre-

tary to call the Railway Express Agency to "pick up" the coat.

In response to the call of Mr. Rabb's secretary, Bernard Oros, a uniformed driver for the Express Company came to Rabb's office. It is undisputed that Rabb and his secretary asked Oros for a receipt before delivering the coat to him and that the latter was unable at the time to give an official receipt, having left the blank forms in his parked truck. Both Rabb and his secretary testified that they gave the coat to Oros after taking his badge number and upon his promise to make out a receipt upon returning to his truck and to deliver it to Rabb's office. Also these witnesses testified that Oros was instructed to insure the coat for $3800.00. Oros, however, testified that he was told, either by Rabb or his secretary, that the package contained a cloth coat valued at $100.00. He further testified that Rabb was in a hurry, and instead of waiting for the driver to go to his truck and return with the receipt, Rabb apparently was satisfied with the notation made of the driver's badge number. Upon reaching his truck with the package Oros made out a uniform receipt in quadruplicate. The first carbon of the receipt was placed upon the package and the second and third carbon copies were delivered to the defendant. Oros did not deliver the original to Rabb or his secretary, nor did he give it to anyone for delivery to either of them. Oros admitted that the original of the uniform receipt which is designed for delivery to the shipper and contains the prescribed agreement limiting the carrier's liability, was destroyed by him.

On June 21, 1946, upon learning that the coat had not been received by the consignee, Rabb wrote to the defendant notifying it of that fact and requested that a search be made for the coat. Three days later on June 24, 1946, a lady named Heinish, an employee of defendant, came to Rabb's office for the purpose of collecting the express charges. She had with her the payment receipt which is the second carbon copy of the original. This copy has a blank space below the sub-caption "Declared Value." In this space there was written "$100.00." This second carbon of the receipt did not contain the language prescribed by Interstate Commerce Commission respecting limitation of liability which appears on the original of the uniform receipt.

Upon requesting payment of the express charges amounting to sixty-seven cents (.67) the collector submitted the payment receipt to Rabb. Thereupon as testified to by the latter, the following occurred:

"A. She handed it to me. She stamped it. She had the rubber stamp, marked it and then as she handed it to me

I took and looked at it and I said, "This is a receipt for the coat?' I says, 'But' I says, 'I didn't give any valuation of $100.00 on here. Where did you get it?' Then I told her, the lady, that the coat was missing, so I says, 'I don't have the other receipt.' So she says, 'Well, you had better pay this anyhow and take this receipt so you will have some evidence that the coat was shipped,' she says, 'otherwise you haven't even got a receipt that the coat was shipped.' So, I realized there was something to that and I paid the woman the 67c and got the receipt."

The foregoing quoted testimony constitutes all that appears in the record in respect of the circumstances surrounding the delivery of the payment receipt to Rabb. The collector did not testify, nor was her failure to do so explained.

On July 2, Rabb again wrote to the defendant, advising that on June 7, 1946, he had shipped a mink coat valued at between $2000.00 and $2500.00 to Schulman & Menzoff, 150 West 30 Street, New York City; that the same had not been delivered to the consignee and he requested that a "tracer be put in to locate the coat." Thereafter suit was instituted by both plaintiffs, The Franklin National Insurance Company, claiming to be subrogated to the extent of $1800.00 paid by it to Mrs. Rabb and the latter asserting a claim for the value of the coat in excess of that amount.

The trial court charged the jury in substance that if on June 7, 1946, a declaration of value in the amount of $100.00 was given as contained in the receipt accepted by Rabb seventeen days later then the plaintiff could recover only that amount.

A common carrier's right to assert a limited liability for loss of goods received by it for transportation in Interstate Commerce is governed by U. S. C. A., Title 49, Sec. 20, Parag. 11 (known as the Second Cummings Amendment to the Interstate Commerce Act) which provides in part as follows:

"Any common carrier * * * receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability hereby imposed; and any such common carrier * * * shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon,

whether such receipt or bill of lading has been issued or not, for the full actual loss, damage or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made, is hereby declared to be unlawful and void. Provided, however, that the provisions hereof respecting liability for full actual loss, damage or injury notwithstanding any limitation of liability or recovery or representation or agreement or release as to value and declaring any such limitation to be unlawful and void, shall not apply * * * to property * * * received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released."

Admittedly there was no written declaration of value by the shipper in this case. The sole issue arising on defendant's asserted defense of limited liability is whether under the facts as disclosed by the evidence there was a written agreement of released value as required by the proviso of the Interstate Commerce Commission Act. The burden of establishing such an agreement is upon the carrier.

In the absence of a written declaration of value by the shipper an agreement in writing as to the released value of the property is an essential prerequisite to the carrier's right to claim a limitation of liability for less than the full amount of the loss. Although the statute clearly contemplates action in writing by the shipper his signature is not essential. The shipper's receipt of and assent to the terms of a written agreement prepared by the carrier is sufficient to make such an instrument the written agreement of the shipper and the carrier. American Railway Express Inc. v. Lindburg, 260 U. S. 584.

It has been held also that where a uniform written receipt containing prescribed language constituting an agreement as to value was delivered by the carrier to an agent

of the shipper at the time the property was received for transportation and retained by the shipper without protestation until after the loss was discovered, the shipper is bound by the agreement. Feinberg v. New York Exp. Co, 163 Fed. (2) 998.

Similarly, in Wolfe v. American Express Co. 197 N. W. 24, where a receipt was delivered to the shipper the day after the shipment was made but before the loss occurred, it was held that the shipper was bound by the terms of the written agreement. The court held that the shipper's acceptance of the receipt under the facts in that case "operated to give it the same status and effect it would have had if delivered to and accepted by him at the time the shipment was accepted by the defendant." However, the authorities are uniform in holding that the rights of a carrier and shipper under the terms of the uniform receipt or bill of lading issued by the former are to be determined by the action of the parties before the loss occurred. Caten v. Salt City Movers Storage Co. 149 Fed. (2d) 428. Vanderbilt v. Chelsea Storage Warehouse, 80 N. Y. S. 300, 80 S. (2d) 302. Hunter v. American Ry. Exp. Co. 4 S. W. (2d) 847; Stricker v. C & N W R. R. Co. 40 N. W. (2d) 30; Smith v. Pippin, 51 S. E. (2d) 159.

In Caton v. Salt City Movers Storage Co., supra, the court said:

"The statutes make it abundantly clear that the carrier's common law liability for full actual damages, whether or not caused by its negligence, is imposed when it accepts goods for carriage, unless a certain specified agreement limiting that liability has been made as the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods."

The following comment by the Court in the Caten case also is pertinent:

"Unless the carrier can comply with the requirements of the statute merely by putting into writing what the shipper has told it orally and then keeping that writing without giving the shipper a chance to verify it and acquiesce in it, if found correct, or to repudiate it if found incorrect, there was no compliance shown here. Obviously no such loose interpretation of the statute is permissible."

In Vanderbilt v. Chelsea et al, supra, the shipment originated in New York and was consigned to the shipper in Connecticut. The shipper signed a shipping order and bill of lading and paid the freight charges as consignee before the delivery of the goods to her in Connecticut. In denying the carrier's claim of limited liability the court said:

"These charges were such that in a proper case the defendant's liability might have been curtailed; but the documents had been prepared by the defendant in New York and were presented to the plaintiff for signature after the defendant had already completed its duty to carry and there remained only its duty to deliver. It is idle to contend that in those circumstances the plaintiff agreed to any curtailment of the defendant's liability or that she had any choice in the matter at all."

We find no dissent from the general rule that a uniform receipt or bill of lading limiting the liability of a carrier for damages must be delivered to the shipper at the time the goods are accepted for transportation or promptly mailed to the shipper in due course of business unless there is an agreement that such instrument shall be delivered at a later time. Harris v. Great Northern R. R. 96 Pac. 224; Clubb v. Hetzel, 198 Pac (2d) 142, 165 Kan. 594; Behrends v. Chic. Rock Island Pac. Ry. 198 Ill. App. 236.

The foregoing authorities give effect to the plain terms of the statute which make the rates of transportation dependent upon the written agreement or declaration of value thus requiring the written declaration or agreement to be made or intended by the parties to become effective before the actual transportation of the goods is undertaken.

In the case under review, two weeks after delivery of the coat to the carrier, Rabb notified defendant that it was missing. At that time neither plaintiff, Mrs. Rabb, nor her agent, had received a uniform receipt or bill of lading or any written agreement of value from the carrier. Three days after Rabb's letter of June 21, 1946, the express charges were paid by him but it is undisputed that the payment was made and the second carbon of the receipt accepted upon the advice of defendant's collector, that this be done to enable the shipper to procure written evidence that the goods had been delivered to the carrier. As hereinabove noted, the testimony of Rabb in this regard was not challenged or impeached by the defendant and it does not appear that the company's collector was unavailable as a witness.

The attempt of defendant to make the charges collected on June 24 applicable to the valuation that appeared in the second carbon copy of the receipt, which was delivered to the shipper after the loss occurred, was not a compliance with the terms of the Interstate Commerce Act. The receipt given on July 24, 1946, was for payment of the express charges only. It was not a receipt for the coat nor did it contain the terms of an agreement of value upon which the rate of transportation was to be fixed. The original of the receipt embracing the terms of such agreement was destroyed by defendant's agent instead of being delivered to the shipper as contemplated by the regulations of the Interstate Commerce Commission.

Whether Rabb orally placed a value of $3800.00 or $100.00 on the coat is immaterial. The statute mandatorily requires a written agreement of value. The purpose of this, among other things, is to remove the uncertainty and difficulty of proof that results from attempting to determine wherein the truth lies in respect of conflicting testimony on oral statements of value. In the nature of the case the precise or approximate time of the loss is not susceptible of proof but under the evidence there is an inescapable inference that the coat was lost before the acceptance by the shipper's agent of the rceipt for payment of the express charges.

We are therefore of the opinion that the defendant failed to sustain the burden of establishing a written agreement as to value and that it was error for the court to charge the jury that it might consider Rabb's acceptance of the payment receipt of June 24 as a confirmation of the defendant's claim that plaintiff placed a valuation of $100.00 upon the mink coat at the time it was delivered to the carrier.

Defendant in its answer admits that a certain package was received for shipment and that the same was lost. However, defendant by the general terms of its answer denies that a mink coat was contained in the package received by it for shipment. It is the claim of defendant that a cloth coat was delivered for shipment. Because of the issue of fact thus made, the trial court did not err in failing to charge the jury on the single issue of the value of the mink coat. The burden rests upon the plaintiff to establish that a mink coat was delivered to the carrier on June 7, 1946, and in the event that issue is resolved in favor of plaintiff, the trier of the facts will then be required to determine the sole remaining issue of the value of the mink coat at the time of the loss.

Defendant also complains of the following portion of the general charge:

"If you find from a preponderance of the evidence that is,

the greater weight of the evidence, that the plaintiffs made a declaration of the value of the fur mink coat on June 7, 1946, to Mr. Oros, the driver for the Railway Express Agency in the amount of $3800.00, or requested insurance be placed on the fur mink coat in the same amount and, further, that the receipt as given to Mr. Rabb seventeen days later was not accepted by him fully and completely and that the declaration contained therein was of $100.00 value, then, you should find for the plaintiffs in the amount of the reasonable and fair value of the fur mink coat at the time of its loss by the plaintiff, as evidenced by all of the testimony."

This charge was erroneous. Plaintiff was not required to prove that he placed a valuation of $3800.00 on the mink coat at the time of its delivery to defendant nor was the burden on plaintiff to prove that Rabb did not unconditionally accept the payment receipt given to him on June 24, 1946.

As stated by the court in Galvaston etc v Wallace, 233 U. S. 481:

"The plaintiffs were not obliged both to prove their case and disprove the existence of a defense * * *. If the failure to deliver was due to * * * some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception."

For the reasons stated the judgment is reversed and cause remanded for further proceedings, in accordance with this opinion. Exc. Order see journal.

SKEEL, PJ, HURD, J, concur.