539 F.2d 1228
 The BOEING COMPANY, a corporation, Plaintiff-Appellant,
v.
U.S.A.C. TRANSPORT, INC., a corporation and Tri-State Motor
Transit Company, a corporation, Third-Party
Plaintiffs and Defendants-Appellees,
v.
UNITED AIRCRAFT CORPORATION, a Delaware Corporation,
Third-Party Defendant.
 No. 74-2318.
 United States Court of Appeals,
Ninth Circuit.
 July 12, 1976.
Rehearing Denied Aug. 6, 1976.
 
 Jack P. Scholfield (argued), of Guttormsen, Scholfield & Stafford, Seattle, Wash., for appellant.
 Frederick V. Betts (argued), of Skeel, McKelvy, Henke, Evenson & Betts, Seattle, Wash., for appellee.
 Before KOELSCH and WALLACE, Circuit Judges, and TAYLOR,* District Judge.
 KOELSCH, Circuit Judge:
 
 
 1
 The Boeing Company ("Boeing") brought this action against the defendant motor carrier ("USAC")[1] to recover stipulated actual damages of $437,058.82 sustained when two of its jet engines were damaged during transit on one of USAC's trucks. Based on the conclusion that Boeing had contractually agreed to limit carrier's liability by shipping the engines on a "released value" basis,[2] the district court granted USAC's motion for summary judgment and entered judgment in favor of Boeing in the lesser sum of $62,757.50. Boeing appeals, and we affirm.
 
 
 2
 Here the standard of Federal Rule of Civil Procedure 56 is met. Even when all inferences favorable to Boeing are indulged, the evidentiary materials which were before the district court lead inescapably to the conclusion that the carrier's bill of lading, which contains an agreed-upon written statement of the released value of the cargo, embodies the contract of carriage.
 
 
 3
 The relevant facts, essentially undisputed, are as follows: This particular shipment was one of a series made pursuant to an agreement between Boeing and the Pratt & Whitney Division of United Aircraft Corporation ("Pratt & Whitney") by which Pratt & Whitney agreed to manufacture and supply to Boeing certain JT-9D jet engines for the latter's 747 aircraft. Boeing had previously conducted discussions with USAC pertaining to carrier equipment and freight rates, and, at Boeing's instance and request, the carrier had duly filed and published NASC Tariff 500-B, MF-ICC 17, which established rates for shipments of jet engines between Connecticut (Pratt & Whitney) and Washington (Boeing), released to a value of $2.50 per pound. In addition, Boeing had provided Pratt & Whitney with its standard shipping instructions requiring the latter, where possible, to ship the engines via USAC and at the "released value" rate.
 
 
 4
 In accordance with those instructions, all shipments of jet engines from Pratt & Whitney to Boeing were at the "released value" rate; Boeing never paid a higher rate. Indeed, on one occasion when four USAC freight bills sought to charge Boeing a higher rate founded on actual value, the Boeing Traffic Department returned the four invoices to USAC, stating in its cover letter the following:
 
 
 5
 "Although your freight bill shows 'value not released' on these engines, it is a well-known fact that all Boeing engines move on lowest release value."
 
 
 6
 USAC corrected those invoices, and Boeing paid them at the "released value" rate.
 
 
 7
 With respect to the particular shipment involved here, USAC's driver did, as was customary, sign for the cargo at Pratt & Whitney's Middletown, Connecticut, plant, on a form of shipping document provided by the latter and which, again as usual, bore no statement of released value.[3] However, when the in-transit shipment arrived at USAC's Maytown, Washington, terminal, the carrier thereupon issued its own straight bill of lading No. 30518, and that bill, which contained an appropriate written statement of released value, accompanied the shipment to the point of the accident and then to its ultimate delivery to Boeing. There Boeing's agent signed that bill, acknowledging delivery and noting the damaged cargo but raising no objection to the statement of released value contained therein. An invoice later prepared by USAC billed the freight at the "released value" rate and was paid by Boeing.
 
 
 8
 On these facts, the district court correctly granted summary judgment for the carrier. The record manifests that Boeing and USAC were engaged in an agreed-upon practice by which USAC would transport engines for Boeing solely at the "released value" rate; that the carrier would issue its bill of lading embodying the contract of carriage some time after it had accepted the relevant shipment; and that the provisions of the bill issued here, along with the rate ultimately charged and paid, were lawful under the applicable statute and tariff.
 
 
 9
 In that regard, we reject Boeing's argument that the contract of carriage was integrated in the shipping document; that writing prepared by Pratt & Whitney contained no statement of released value. And the record shows that all parties uniformly and consistently treated and regarded such Pratt & Whitney documents as mere receipts for goods (i. e., as evidence that the goods were in fact received), not as the embodiment of contracts governing the terms of the carriage.[4] And though parol evidence would be inadmissible to vary the terms of a valid written contract, such evidence is nevertheless admissible to show the nonexistence or invalidity of an alleged contract or that it is not a full integration of the agreement between the parties. See, e. g., Shelton Yacht and Cabana Club, Inc. v. Suto, 150 Conn. 251, 188 A.2d 493, 496 (1963); Agnew v. I. R. Stich Associates, Inc., 3 Conn. 336, 214 A.2d 134, 137-138 (Conn.App.1965); Barovic v. Cochran Electric Co., Inc., 11 Wash.App. 563, 565-566, 524 P.2d 261 (1974); Lynch v. Higley, 8 Wash.App. 903, 908-912, 510 P.2d 663 (1973); Diel v. Beekman, 1 Wash.App. 874, 878-880, 465 P.2d 212 (1970).
 
 
 10
 We similarly reject Boeing's argument that the carrier's bill of lading is without effect because it was issued after movement of the shipment had commenced. True, 49 U.S.C. § 20(11) does require that "any common carrier . . . receiving property for transportation . . . issue a receipt or bill of lading therefor." However, that code section is silent as to when delivery of the requisite bill must take place. As well stated in Rabb v. Railway Express Agency, Inc., 58 Ohio L.Abst. 216, 95 N.E.2d 784, 789 (Ohio App.1950),
 
 
 11
 "(w)e find no dissent from the general rule that a uniform receipt or bill of lading limiting the liability of a carrier for damages must be delivered to the shipper at the time the goods are accepted for transportation or promptly mailed to the shipper in due course of business unless there is an agreement that such instrument shall be delivered at a later time. Harris v. Great Northern R. R., 48 Wash. 437, 96 P. 224; Clubb v. Hetzel, 165 Kan. 594, 198 P.2d 142; Behrends v. Chicago Rock Island Pac. Ry. Co., 198 Ill.App. 236." (Emphasis supplied.)
 
 
 12
 Here the mode of delivery falls within the exception above noted. We perceive no violation of the statute.[5]
 
 
 13
 Nor can we accept Boeing's contention that the carrier's bill of lading contained no statement of released value "agreed upon in writing" as required by § 20(11). Under the circumstances of this case, the evidence of Boeing's knowledge of, and assent to, the written statement of released value including that of Boeing's instructions to Pratt & Whitney, its past conduct, its subsequent acceptance of the bill without objecting to that statement of value, and its payment of freight at the "released value" rate amply supports the district court's conclusion that the statutory requirement is satisfied. Of course the signature of Boeing's agent would have constituted the most satisfactory evidence of its agreement to the statement of released value, but such evidence is not required. American Railway Express Company v. Lindenburg, 260 U.S. 584, 590-592, 43 S.Ct. 206, 67 L.Ed. 414 (1923).
 
 
 14
 Moreover, we fully agree with the district court's conclusion that "it would be inequitable for Boeing to now be allowed to recover for the damage to the shipment in question on a full value basis." As the Court observed in Lindenburg, supra, 260 U.S. at 592, 43 S.Ct. at 209.
 
 
 15
 "Having accepted the benefit of the lower rate dependent upon the specified valuation, the respondent is estopped from asserting a higher value. To allow him to do so would be to violate the plainest principles of fair dealing."
 
 
 16
 See also Glickfield v. Howard Van Lines, 213 F.2d 723, 726-727 (9th Cir. 1954).
 
 
 17
 AFFIRMED.
 
 
 
 *
 The Honorable Fred M. Taylor, Senior United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 Defendant U.S.A.C. Transport, Inc., at one time a wholly owned subsidiary of defendant Tri-State Motor Transit Company, was merged into the latter corporation on January 1, 1970
 
 
 [2]
 So far as relevant here, a common carrier is liable under 49 U.S.C. § 20(11) "for the full actual loss, damage, or injury" to property received for transportation unless the carrier is authorized or required
 "to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released."
 Rates founded on a declaration of released value are normally lower than their counterparts predicated on full value since the shipper choosing the "released value" rate becomes a co-insurer of the shipment. See generally Newel, Released Rates and Rates Dependent upon Actual Value, 1970 Transportation Law Institute: Tariff Rates and Practices Part 1, pp. 177 et seq. (1970).
 
 
 [3]
 The record reveals that Pratt & Whitney did not customarily forward such documents to Boeing
 
 
 [4]
 Texas & Pacific Railway Company v. Leatherwood, 250 U.S. 478, 39 S.Ct. 517, 63 L.Ed. 1096 (1919), and Missouri, Kansas & Texas Railway Company v. Ward, 244 U.S. 383, 37 S.Ct. 617, 61 L.Ed. 1213 (1917), both cited by Boeing, are not to the contrary. In those cases, the Court held that a second bill of lading issued by a connecting carrier was without effect on the rights of the parties as governed by the initial bill of lading issued by the original carrier accepting the goods. Here, however, the carrier's bill though not issued until after acceptance of the cargo was the only bill, the Pratt & Whitney document having been regarded merely as a receipt for the goods, not as an integration of the contract of carriage
 
 
 [5]
 Were the evidence of the agreement less clear or were this a case in which the bill of lading had not been issued until after the loss occurred, summary judgment would probably not have been appropriate. From the perspective of wishing to avoid needless controversies such as this one, as well as from a legal and business standpoint, we are clear that the issuance and delivery of a bill of lading integrating the contract of carriage at the time of acceptance of the goods is the better and more prudent practice