**GULF & WESTERN INDUSTRIES, INC., d/b/a Kaiser-Roth Hosiery, Plaintiff,**

v.

**OLD DOMINION FREIGHT LINE, INC., and Brown Transport Corporation, Defendants.**

**No. C–85–116–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

April 29, 1986.

Constance L. Floyd and Harold Greeson, of Greeson, Allen & Floyd, Greensboro, N.C., for plaintiff.

Andrew S. Lasine, of Keziah, Gates & Samet, High Point, N.C., for defendant Old Dominion Freight Line, Inc.

Joseph T. Carruthers, of Bell, Davis & Pitt, Winston-Salem, N.C., for defendant Brown Transport Corp.

## MEMORANDUM ORDER

HIRAM H. WARD, Chief Judge.

This matter comes before the Court on plaintiff Gulf & Western Industries, Incorporated's, Motion to Amend Complaint (August 12, 1985), defendant Old Dominion Freight Line, Incorporated's (Old Dominion's) Motion for Summary Judgment (July 22, 1985), and defendant Brown Transport Corporation's (Brown's) Motion for Summary Judgment (July 18, 1985). The Court will grant plaintiff's motion to amend its complaint and grant Old Dominion's and Brown's motions for summary judgment.

Plaintiff is a Delaware Corporation doing business in North Carolina. During the course of plaintiff's business, it had occasion to transport a knitting machine to Italy and then back to Burlington, North Carolina. Plaintiff contacted Schenkers International Forwarders, Inc. (Schenkers) to arrange for the shipment of the knitting machine. Regarding the return trip, Schenkers arranged for Old Dominion to ship the knitting machine from New York to customs inspection in Norfolk, Virginia. Schenkers further arranged for Brown to transport the knitting machine from Norfolk, Virginia to Burlington, North Carolina. On May 12, 1982, the knitting machine arrived in Burlington, North Carolina damaged. This action arose out of the damage to the knitting machine.

After the knitting machine arrived damaged, plaintiff by letter dated July 22, 1982, made a claim to Old Dominion for damages. Old Dominion denied the claim by letter dated August 31, 1982. (Answer to Requests For Admissions of Brown # 4). By letter dated September 10, 1982, plaintiff made a claim to Brown for damages. Brown denied the claim by a letter dated September 30, 1982. (Answers to Requests for Admissions of Brown # 10). Plaintiff filed a complaint against Old Dominion and Brown regarding the damage to the knit-

ting machine on January 25, 1985. Therefore, plaintiff filed its action against Old Dominion about two years and five months after Old Dominion denied its claim and plaintiff filed its action against Brown about two years and four months after Brown denied its claim.

Defendants contend and plaintiff does not dispute that the contracts of carriage between Schenkers and the defendants respectively, as evidenced by bills of lading and tariffs, each contained a time limitation within which actions for damages against the carrier must have been brought. Both contracts required that an action against the carrier for damages to goods be brought within two years and one day of the date on which the carrier gives notice of disallowance of the claim in writing. The validity of such a provision is recognized by Title 49 U.S.C. § 11707(e).

Defendants argue that the two year and a day limitation applies to plaintiff's action thus barring plaintiff's claims as untimely. Defendants argue that the limitation applies whether Schenkers was plaintiff's agent or an independent contractor. On the other hand, plaintiff argues that its action is not based on the bills of lading between Schenkers and defendants, but sounds in tort as a negligence action. Plaintiff argues that its alleged negligence action directly against the carriers is unaffected by the two year and a day limitation in the carrier's contracts with Schenkers.

## DISCUSSION

### Plaintiff's Motion to Amend its Complaint

■ Looking first at plaintiff's motion to amend its complaint, original paragraph IV of the complaint states:

Schenkers International Forwarders, Inc. (hereinafter referred to as "Schenkers"), is a freight forwarder and was acting at all times pertinent hereto as the duly authorized agent of the shipper/consignee Plaintiff Kaiser-Roth.

Under this language, plaintiff would clearly be bound by the two year and a day

limitation under simple agency principles. However, plaintiff has moved to amend paragraph IV of its complaint to read:

Schenkers International Forwarders, Inc. (hereinafter referred to as "Schenkers"), is a freight forwarder and was employeed [sic] by Plaintiff to ship a knitting machine to Italy and return it to Burlington, North Carolina.

Plaintiff contends that it inadvertently used the term "agency" in its original complaint and that the true relationship between plaintiff and Schenkers was that of employer and independent contractor. Defendants' object to the proposed amendment primarily by arguing that amendment at this time would be prejudicial. Rule 15 Fed.R.Civ.P. states: "leave [to amend] shall be freely given when justice so requires." Finding no prejudice to defendants, the Court will allow plaintiff's proposed amendment to paragraph IV.

### Defendants' Motions For Summary Judgment

Summary judgment shall be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In the instant case there is no dispute that the contracts of carriage involving Old Dominion and Brown contained the two year and a day limitations; nor is it disputed that plaintiff failed to bring its action against defendants within two years and a day from the date defendants respectively gave written notice of disallowance to plaintiff. Instead, plaintiff argues that the limitations in the contracts of carriage do not apply to its action against defendants. Therefore, if the two year and a day rule applies to plaintiff here, defendants are entitled to judgment as a matter of law.

■ For the purpose of these motions, the Court assumes arguendo plaintiff's contention that Schenkers was a freight forwarder employed by plaintiff and was not strictly speaking its agent. Thus, the relationships of the parties relevant to the motions for summary judgment are as follows: Plaintiff contracted with Schenkers

to transport the knitting machine to Italy and then back to Burlington, North Carolina. Schenkers was a freight forwarder. Therefore, as between plaintiff and Schenkers their relationship was that of customer and freight forwarder which is *similar* to that of shipper and common carrier.[1] *Chicago, Milwaukee, St. Paul & Pacific R. Co. v. Acme Fast Freight,* 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817 (1949). There was a bill of lading defining their relationship and mutual obligations.

■ The relationship between Schenkers and both Old Dominion and Brown was that of shipper to carrier. A freight forwarder has the status of a shipper with respect to the carriers with which it contracts for the transport of goods. *Chicago,* 336 U.S. at 467–68, 69 S.Ct. at 693–94, 93 L.Ed. at 820. In summary, plaintiff's relationship to Schenkers was that of customer-freight forwarder; Schenkers' relationship to both Old Dominion and Brown was that of shipper-carrier; and the Court assumes arguendo that plaintiff did not have a shipper-carrier nor other *direct* contractual relationship with either defendant.

The dispositive issue is whether a customer of a freight forwarder has a direct action against the carrier hired by the freight forwarder to ship the goods owned by the customer and whether such action, if any, is unrestricted by limitations contracted for by the freight forwarder and the carrier. This issue is affected by the unique nature of the customer—freight forwarder—common carrier relationship and the interrelation of the Carmack Amendment and the Freight Forwarders Act. The Carmack Amendment and Freight Forwarders Act as consolidated and revised[2] states in pertinent part:

(a)(1) A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission under subchapter I, II, or IV are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and applies to property reconsigned or diverted under a tariff filed under subchapter IV of chapter 107 of this title. . . .

(2) A freight forwarder is both the receiving and delivering carrier. . . .

(b) The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the

---

1. A freight forwarder has some of the characteristics of both carrier and shipper. In its relations with its customers, a forwarder is subjected by statute to many of the requirements and regulations applicable to common carriers under Parts I, II, and III of the Interstate Commerce Act. In its relations with these common carriers, however, the status of the forwarder is still that of shipper. Thus a freight forwarder has a dual nature. *Chicago,* 336 U.S. at 467–68, 69 S.Ct. at 693–94, 93 L.Ed. at 820. Plaintiff's most straightforward remedy for the damage to its knitting machine was against Schenkers. A freight forwarder has broad liability for damage to goods in transit regardless of whether the damage occurs while the goods are in its hands

or the hands of an underlying carrier hired by it. *See* 49 U.S.C. § 11707(a)(2); *Chicago,* 336 U.S. at 486–87, 69 S.Ct. at 493–94, 93 L.Ed. at 830.

2. Former 49 U.S.C. § 20 11–12 and 49 U.S.C. § 1013 have been revised and renumbered. *E.g.,* 49 U.S.C. § 11707(a)(1) is derived from part of former 49 U.S.C. § 20(11); § 11707(a)(2) is derived from part of former § 1013; and § 11707(b) is derived from former § 20(12). *See* Historical and revision notes following 49 U.S.C.A. § 11707. The Court will refer to sections of the Carmack Amendment and Freight Forwarders Act as they are presently modified.

carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, as evidenced by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a civil action brought by that person. Title 49 U.S.C. § 11707. Additionally, Title 49 § 11707(e) recognizes the right of a carrier to prescribe time limits within which it may be sued for claims related to shipments.

(e) A carrier may not provide by rule, contract or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

The issue in this case must be viewed in light of the extensive regulation of Congress in the area of interstate shipment by common carrier.

[D]iscussing the exclusive character of the Carmack Amendment regarding a carriers liability under interstate contracts of shipment, the Supreme Court made the following observations:

> That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it.

*American Synthetic Rubber Corp. v. Louisville & N.R. Co.,* 422 F.2d 462, 465 (6th Cir.1970), quoting *Adams Express Co. v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913).

Thus, the initial question is whether any action exists in favor of a customer of a freight forwarder directly against an underlying carrier upon whose line the goods were damaged. The Supreme Court in the *Chicago* case had occasion to discuss the relationships among customers, freight forwarders, and carriers. 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817 (1949). The Supreme Court indicated that shippers by freight forwarder are "permitted to sue underlying carriers for loss or damage occasioned by the latter." *Chicago,* 336 U.S. at 487 n. 27, 69 S.Ct. at 703, n. 27, 93 L.Ed. at 830 n. 27. Regarding the nature of the shipper by freight forwarder's action, the Court stated: "[t]he theory of these actions was that the shipper is the undisclosed principal of its agent, the forwarder, in the latter's contract with the carrier." *Id.* Under this view of a customer-shipper's action, the customer would be bound by the terms of the carriage contract between the freight forwarder and the carrier. Plaintiff seeks to avoid this result by styling its action as one for negligence not based on the Schenkers-Old Dominion or Brown contracts.

■ The Supreme Court's decision in *Great Northern Railway Co. v. O'Conner,* is instructive on whether plaintiff's styling its action as negligence is sufficient for plaintiff to avoid the terms of defendants' contracts of carriage regarding the two year and a day limitation. 232 U.S. 508, 34 S.Ct. 380, 58 L.Ed. 703 (1914). In *Great Northern* the plaintiff shipped household goods she owned via Boyd Transfer Co. (Boyd), a transfer company who was also a freight forwarder. Without express authority from plaintiff Boyd set a low value for plaintiff's goods when it contracted with the carrier for shipment. The goods were lost in shipment. Plaintiff sued the underlying carrier for the full value of the lost goods. The Court faced the issue of whether the plaintiff-owner in its suit against the carrier was bound by the value contracted for by Boyd. The Court held that the plaintiff was bound by the valuation and stated:

[T]he transfer company had been intrusted with goods to be shipped by railway, and, nothing to the contrary appearing, the carrier had the right to assume that the transfer company could agree upon the *terms of shipment,* some of which were embodied in the tariff. The carrier was not bound by [plaintiff's] private instructions or limitation on the authority of the transfer company, whether it be treated as agent or *forwarder.*

*Great Northern,* 232 U.S. at 514, 34 S.Ct. at 382–83, 58 L.Ed. at 706 (emphasis added). Therefore, the Court embraced the principle that the customer of a freight forwarder is bound by the terms of the contract between the forwarder and the carrier. The Court reasoned "that the carriers were not concerned with the question of title but must treat the forwarder as shipper ...." *Id.* Additionally, it should be noted that a shipper by carrier cannot enlarge its rights by calling its action one for negligence when it arises under a contract of carriage. *See American Synthetic Rubber Corp.,* 422 F.2d at 468; *Outlaw v. Transit Homes, Inc.,* 145 Ga. App. 695, 244 S.E.2d 633, 635 (1978).

■ The Court finds the result and reasoning of *Great Northern* to be controlling in the instant case as the two year and a day provision at issue here is analogous to the valuation provisions enforced in the *Great Northern* case. Additional support for this conclusion is found in the Sixth Circuit which held a consignee bound by the terms of the bill of lading in *Walterman Co. v. Penn. R.R.,* 295 F.2d 627 (6th Cir.1961). The *Walterman* court affirmed a grant of summary judgment against a consignee for failure to file a claim with the carrier within nine months of delivery as required by the bill of lading. 295 F.2d at 628. The *Walterman* court stated: "the carrier may not waive or be estopped to assert the requirements of the bill of lading as this would permit discrimination which

is prohibited by law." *Id.* No indication was given that the consignee had any relationship with the carrier other than that of consignee nor that he was a party to the shipment contract.

Plaintiff relies on *Lord Electric Co. v. Pacific Intermountain Express Co.,* 282 Or. 335, 578 P.2d 776 (1978), as supporting that it is not bound by the forwarder-carrier contract provisions in this case. However, without expressing a view on whether *Lord Electric* was properly decided the court finds it inapposite for two reasons. Primarily, the Court finds it inapposite because the relationships of the parties in *Lord Electric* were different from the relationships in the instant case. The plaintiff in *Lord Electric* was a purchaser of goods which the seller shipped by common carrier. The seller shipper was not a freight forwarder whom the plaintiff had employed to ship his goods. On the other hand, here the plaintiff employed Schenkers, a freight forwarder, to ship its equipment via common carrier. Thus, the customer—freight forwarder—common carrier relationship exists in the instant case but was absent in *Lord Electric.* Secondly, the plaintiff in its complaint here has sought to benefit under the Schenkers—Old Dominion and Brown contracts,[3] while as the *Lord Electric* Court emphasized the plaintiff there did not assert the underlying contract. Hence, *Lord Electric* is not persuasive authority for the present case.

The Court for the reasons stated above thus concludes that plaintiff is bound by the two year and a day limitation found in Schenkers' contracts of carriage with both Old Dominion and Brown. Because plaintiff failed to file its claim within two years and a day of receiving written notice of disallowance from Old Dominion and Brown respectively, defendants' motions for summary judgment must be granted.

---

**3.** Plaintiff in paragraph X of its complaint alleges that Brown is liable for all damage as the "delivering carrier" under 49 U.S.C. § 11707. Such liability under § 11707 runs to one entitled to recover on the bill of lading. 49 U.S.C. § 11707(a)(1). Additionally, plaintiff states in paragraph XII that it filed its claim with Old Dominion and Brown pursuant to the contracts of carriage.

IT IS, THEREFORE, ORDERED that plaintiff's motion to amend its complaint be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the motions for summary judgment of Old Dominion and Brown be, and the same hereby are, GRANTED and that plaintiff's claims as to each defendant are hereby DISMISSED.