GREEN, J.
AIG Uruguay Compania de Seguros, S.A. [“AIG”], as subrogee of its insured, Abiatar, S.A., appeals a final summary judgment and a final judgment awarding fees and costs to defendant Landair Transport, Inc. We affirm.
Abiatar purchased cellular phones from Motorola, Inc., at Motorola’s Illinois headquarters for $130,000. Abiatar insured the shipment with AIG. Abiatar contracted with Montevideo International Forwarders, a freight forwarder, to arrange to transport the phones from Illinois to Miami, Florida, and to ship the phones to Uruguay. Montevideo contracted with Sig M. Glukstad, Inc., d/b/a Miami International Freight Forwarders [“MIF”] to arrange for the transportation of the phones. MIF contracted with USA Trading Network, Inc., d/b/a USA Cargo and Courier [“USA Cargo”] to transport the phones to Miami.
USA Cargo issued bill of lading number 100238 to cover the shipment from Illinois to Miami. The bill of lading limited USA Cargo’s liability to “actual damages or $100.00, whichever is less,” unless the shipper paid for and declared a higher authorized value. The declared value was. speck fied as “MF,” or “max free.” In other words, no declared value was indicated on the bill of lading.
USA Cargo contracted with Forward Air, Inc., a licensed property bfoker, to transport the phones to Miami. Forward Air issued airfreight waybill number 3416127 to cover the shipment. The waybill limits the value of the property to “50<t per pound, subject to a $50 minimum.” No value was declared for the property on the waybill. The shipment weighed 3,122 pounds.
Forward Air subcontracted the shipment to Landair Transport, Inc., a contract carrier. Landair and Forward Air had an ongoing shipping relationship formalized in a transportation contract. That contract proscribed Landair’s liability to the same limits in Forward Air’s waybill: fifty cents per pound, unless the shipper declared a value for the property, and the appropriate increased shipping charges for that value were paid. Pursuant to the transportation contract terms, a separate bill of lading for Landair’s transport was not issued: Forward Air’s waybill governed the shipment. While on Landair’s route to Miami, the cargo was lost.
USA Cargo sent Forward Air a claim letter to recover for the lost cargo. Forward Air sent USA Cargo a check for $1,625, pursuant to the liability limitations on airfreight waybill number 3416127. USA Cargo released Forward Air from any further liability. USA Cargo and Forward Air assert that this release was intended to release Landair’s liability as well.
AIG paid Abiatar $139,230 pursuant to the marine insurance “all risk” policy it issued covering the shipment. Abiatar executed a subrogation agreement in AIG’s favor. AIG, as Abiatar’s subrogee, brought suit against all the carriers to recover for the value of the lost cargo. AIG asserted claims under the Carmack Amendment,[1] common law negligence, and bailment.
Landair and AIG filed cross-motions for summary judgment. The court denied *171 AIG’s motion and entered a final summary judgment in Landair’s favor. The court found that the transportation agreement between Landair and Forward Air was valid and enforceable, and that AIG could not recover from Landair directly, but had to recover from Montevideo, the party with whom its subrogor had contracted. Thereafter, the court entered a final judgment awarding Landair fees and costs. AIG appeals both judgments.
On appeal, AIG asserts that the trial court erred in finding that it did not have standing to sue Landair, and that Landair cannot shelter itself from liability based on the transportation agreement with Forward Air. We address each argument 'in turn.
At the outset, we agree with AIG’s contention that it has standing to sue Lan-dair. It is irrefutable that AIG has standing to sue Landair, and any other carrier, for loss of the shipment. Gulf & Western Indus., Inc, v. Old Dominion Freight Line, Inc., 633 F.Supp. 688 (M.D.N.C. 1986). In Gulf & Western Industries, the dispositive issue was whether the customer of a freight forwarder had a direct action against a carrier hired by the forwarder, and whether the action was subject to the limitation in the contract. Relying on Chi cago, Milwaukee, St. Paul & Pacific Railway Co. v. Acme Fast Freight, 336 U.S. 466, 69 S.Ct. 692, 93 L.Ed. 817 (1949), the court concluded that shippers are permitted to sue underlying carriers for loss or damage occasioned by the carrier. 633 F.Supp. at 692 (quoting Chicago, 336 U.S. at 487 n. 27, 69 S.Ct. 692). See also Boeing Co. v. U.S.A.C. Transp., Inc., 539 F.2d 1228 (9th Cir.l976)(owner sued carrier that lost cargo); Hughes v. United Van Lines, Inc., 829 F.2d 1407 (7th Cir.l987)(home-owners sued carrier and subsidiary with whom they had negotiated for damages to goods destroyed in transit); Feinberg v. Railway Express Agency, 163 F.2d 998 (7th Cir.l947)(owner sued the carrier directly for an item lost in transit); Banos v. Eckerd Corp., 997 F.Supp. 756, 762 (E.D.La.1998)(owner of photographs given to Eckerd, as person beneficially interested in the shipment, has standing to sue carrier under Carmack Amendment). Therefore, we hold the trial court erred in concluding that AIG had no standing to sue Landair.
Athough AIG has established its standing to sue, we do not agree with AIG’s argument that it is entitled to recover the full value of the shipment from Landair. To so hold would contradict well-settled law that liability limitations in bills of lading and shipping agreements are enforceable. Banos, 997 F.Supp. 756; Boeing Co., 539 F.2d 1228; Hughes v. United Van Lines, Inc., 829 F.2d 1407 (7th Cir.1987); Feinberg v. Railway Express Agency, 163 F.2d 998 (7th Cir.1947).
In Banos v. Eckerd Corp., the court explained that
[t]he liability of a carrier for damage to an interstate shipment is controlled by the Interstate Commerce Act. The Car-mack Amendment to the Interstate Commerce Act [49 U.S.C. § 14706] imposes liability on carriers for actual loss, damage, or injury to property they transport, and declares unlawful and void any contract, regulation, tariff, or other attempted means of limiting its liability....
After the adoption of the Carmack Amendment, shippers began to charge exorbitant rates for shipments insured at full value. In reaction, Congress enacted the Cummings Amendment ..., *172 which allowed carriers to limit their liability, but granting authority to the ICC to approve rates through tariffs....
Each rate in a tariff carries a corresponding level of liability per pound which is term[ed] a ‘released rate.’ A higher freight rate, therefore, secures a higher level of liability. When a tariff contains an inadvertence clause and a shipper fails to declare a value in the bill of lading, then the shipper is insured at the lowest rate permitted in the tariff. The inadvertence clause is usually incorporated into the bill of lading in the released rate clause by a sentence which states that if the shipper. fails to state a released rate, the shipment is deemed released at the lowest rate or the rate listed. The shipper, therefore, is not compelled to accept the given released rate but may instead choose a higher rate by incorporating it into the bill of lading.
Banos, 997 F.Supp. at 760-61 (citations omitted).
The holdings in the cases AIG cites to support its standing argument also support a finding that AIG is bound .by the limitation of liability in the Forward Air airfreight waybill. In Boeing Co. v. U.S.A.C. Transport, Inc., 539 F.2d at 1228, the court affirmed a summary judgment in the carrier’s favor enforcing the limitation of liability in the bill of lading. The court determined that the owner could not recover the full value of the shipment after accepting the benefit of the lower rate, and corresponding limitations in liability. Under this reasoning, although AIG has standing to sue, AIG stands in the shoes of its subrogor[2] who accepted the benefit of a lower shipment rate. Therefore, AIG may not recover the full value of the goods.
In Hughes v. United Van Lines, Inc., 829 F.2d 1407 (7th Cir.1987), the court found that the limitation of liability in the contract was binding on the shipper. Similarly, Feinberg v. Railway Express Agency, 163 F.2d 998 (7th Cir.1947), presents another instance where the limitation of liability in the receipt issued for goods was enforced to the shipper’s detriment. The Banos v. Eckerd Corp., 997 F.Supp. 756 (E.D.La.1998) court found that the limitation of liability encompassed in the Service Agreement between the store and the carrier governed liability for the loss. Hence, the limitations of liability in the airfreight waybill are enforceable.
AIG asserts that Landair is not covered by any bill of lading and not entitled to any liability limitations thereunder because the second bill of lading, issued by Forward Air, is invalid under Mexican Light & Power Co. v. Texas Mexican Railway Co., 331 U.S. 731, 67 S.Ct. 1440, 91 L.Ed. 1779 (1947). We cannot agree with this reading of Mexican Light & Power. Mexican Light & Power held that a connecting carrier is only responsible for damages on its own line of carriage. The Court explained that the issuance of a second bill of lading did not convert a connecting carrier into an initial carrier, and thereby expand the connecting carrier’s scope of liability for loss occurring outside of its line. The Mexican Light & Power Court held that the second bill of lading was invalid to circumscribe the initial carrier’s liability because the connecting carrier received no payment for transporting the goods on its line other than its share in the rate prepaid to the initial carrier. Hence, there was no consideration for expanding the connecting carrier’s liability. Mexican Light & Power does not stand, as AIG suggests, for the proposition that subsequent bills of lading for transportation of goods are void. Thus, we do not agree that the only bill of lading that can be *173 considered in this case is the original USA Cargo bill of lading. The Forward Air airfreight waybill was a valid bill of lading setting the terms of the connecting carrier’s liability.
Additionally, the transportation agreement between Landair and Forward Air, establishing that Forward Air bills of lading could be incorporated into Landair’s agreement to transport goods, was also valid. Shipping agreements of this type are valid, see Boeing Co. v. U.S.A.C. Transport, 539 F.2d at 1229-30; Banos v. Eckerd Corp., 997 F.Supp. at 758-59; American Home Assurance Co. v. Forward Air, Inc., No. 95-1639, 1996 WL 1480485 (S.D.Fla. Mar.5, 1996), and the value limitations in these agreements are enforced by the courts. Boeing Co.; Ba-nos. A written contract like the one between Landair and Forward Air was construed by the court in Esprit de Corp v. Victory Express, Inc., No. C93-00350, 1999 WL 9939 (N.D.Cal. Jan.5, 1999). In Esprit de Corp, a transportation broker and a contract carrier had a long-standing written agreement that stipulated the terms and conditions of carriage. The agreement incorporated the carrier’s shipping tariffs and liability limitations. More importantly, the agreement provided that a bill of lading need not be issued for carriage under that agreement. The Esprit de Co7p court held that the agreement was sufficient to limit the connecting carrier’s liability. Likewise, we hold that Landair’s liability is limited by the terms of the Forward Air airfreight waybill. Pursuant to the terms of the Landair-Forward Air agreement, that waybill controls the shipment and limits Landair’s liability.
Landair’s liability ran to Forward Air, the party with whom it contracted. Forward Air was released from its liability by the USA Cargo-Forward Air release. As the parties to that release have asserted, Landair was covered under this release; Landair was entitled to rely on this representation. An owner is bound by the terms of the carriage contract between the forwarder and the carrier; hence, the limitations of liability in that contract constrain the owner’s recovery. Gulf & Western Indus., Inc., 633 F.Supp. 688 (citing Chicago, Milwaukee, St. Paul & Pacific R. Co., 336 U.S. at 465, 69 S.Ct. 692). It follows logically that releases under those contracts are also binding on the owner.
Hence, based on the foregoing, although AIG had standing to sue Landair, we affirm the summary judgment because the trial court properly concluded that the Landair-Forward Air transportation agreement was valid. The liability under the airfreight waybill number 3416127 has been satisfied by Forward Air’s payment to USA Cargo. There can be no further recovery by AIG against Landair. As the trial court noted, AIG is free to recover from Montevideo International Forwarders, the party with whom their subrogee contracted.
The final summary judgment in Lan-dair’s favor is therefore affirmed. The judgment awarding Landair fees and costs is also affirmed.
Affirmed.

. The Carmack Amendment, 49 U.S.C. § 14706, imposes liability on carriers for loss *171 or damage to the property that they transport. Banos v. Eckerd Corp., 997 F.Supp. 756, 762 (E.D.La.1998).

. As subrogee of its insured, Abiatar, AIG stands in Abiatar's shoes. Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638, 646-47 (Fla.1999).