**Maria Martin (Mrs. Edward V.) JONES, Plaintiff,**

v.

**YELLOW FREIGHT SYSTEM, INC., Defendant.**

**Civ. A. No. 85–166–ALB–AMER.**

United States District Court,
M.D. Georgia,
Albany-Americus Division.

March 23, 1987.

Robert B. Langstaff, Langstaff, Camp-
bell & Plowden, Albany, Ga., for plaintiff.

Robert C. Semler, Dennis, Corry, Webb
& Carlock, Atlanta, Ga., for defendant.

FITZPATRICK, District Judge:

On September 10, 1984, plaintiff, Maria
Martin Jones, delivered to the Yellow
Freight System Terminal in Albany, Geor-
gia, one box previously wrapped and boxed
by plaintiff. The box contained an oriental
rug and is described by plaintiff as an
antique Amritzar Carpet allegedly valued
between $20,000.00 and $25,000.00. The
defendant disputes the value of the carpet.

When plaintiff arrived at defendant's ter-
minal in Albany, she requested that an
employee from defendant's office help her
remove the package from her automobile.
According to plaintiff's affidavit, during
the process of arranging for shipping,
plaintiff explained to the employee that the
contents of the box was a very valuable
oriental rug. "He explained to her the
procedure for declared value but assured
her that it was not necessary to declare its
full value as it would be given full and safe
treatment irrespective of the value she
placed on it." (Affidavit of Maria Martin
Jones at 2).

The defendant accepted the carpet for
shipment. Based on a declared weight of
80 pounds, plaintiff paid a total shipping
charge of $67.09. The printed form bill of
lading provides in part:

> Note—Where rate is dependent on value,
> shippers are required to state specifically
> in writing the agreed or declared value
> of the property. The agreed or declared
> value of the property is hereby specifical-
> ly stated by the shipper to be not exceed-
> ing: $_____ per _____.

No one filled in the blank spaces declaring
the value of the property. The property is
described on the face of the bill of lading
as "1 Oriental Rug Boxed," and the weight
is declared as "80." Plaintiff, however, did
not sign the bill of lading.

The bill of lading further provides:

> RECEIVED, subject to the classifica-
> tions and tariffs in effect on the date of
> the issue of this Bill of Lading....
>
> .     .     .     .     .
>
> Shipper hereby certifies that he is famil-
> iar with all of the bill of lading terms and
> conditions in the governing classification
> and the said terms and conditions are
> hereby agreed to by the shipper....

The rug never reached its destination,
and it is undisputed that it was lost in
transit. At all times relevant to the inci-
dent that gave rise to this lawsuit, there
was in effect the National Motor Freight
Traffic Associations' Tariff 100–K that was
on file with the Interstate Commerce Com-
mission.

Plaintiff filed suit in State court setting
forth claims grounded in State law. De-
fendants removed to federal court and filed
a motion for summary judgment or partial
summary judgment. Subsequently, this
court notified the parties that it would con-
sider entering summary judgment for
plaintiff or defendant on March 20, 1987.

■■■ The Interstate Commerce Act, 49
U.S.C. § 10101 *et seq.*, governs the liability
of a common carrier for damages caused to
an interstate shipment. *Missouri Pacific
R.R. Co. v. Elmore & Stahl*, 377 U.S. 134,
137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194
(1964). The Georgia state courts have also
concluded that Georgia law does not apply
to the liability of interstate common carri-
ers for damages caused during interstate

shipment and that this area is preempted by the Carmack Amendment. *Seaboard Air Line R. Co. v. Henry Chanin Corp.,* 84 Ga.App. 442, 66 S.E.2d 113, 115–16 (1951) (interpreting 49 U.S.C. § 20(11)). The Carmack Amendment totally occupies the field of regulating interstate carriers. *George R. Hall, Inc. v. Superior Trucking Co., Inc.,* 514 F.Supp. 581 (N.D.Ga.1981).

The Carmack Amendment to the Interstate Commerce Act imposes absolute liability upon carriers for the value of goods lost or damaged during shipment,[1] but permits carriers to limit their liability pursuant to section 10730. 49 U.S.C. § 11707(c)(4). Section 12 of the Motor Carrier Act of 1980, divided section 10730 into two subsections. Subsection (a) consisted of the prior § 10730 but was made inapplicable to carriers of nonhousehold property. The new subsection (b) allowed a motor carrier of nonhousehold property to establish released rates without prior approval of the Interstate Commerce Commission, but provided that the commission could require the carrier to have in effect full liability rates as well. *Shippers Nat'l Freight Claim Council, Inc. v. Interstate Commerce Comm'n,* 712 F.2d 740, 741 (2d Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984).

Section 10730(a) provides in part:

The Interstate Commerce Commission may require or authorize a carrier (including a motor common carrier of household goods but excluding any other motor common carrier of property and excluding any rail carrier) providing transportation or service subject to its jurisdiction ... to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by a written declaration of the shipper, or by a written agreement, when that value would be reasonable under the circumstances surrounding the transportation.

49 U.S.C. § 10730(a).

▆▆▆ Under the Carmack Amendment, a shipper may only rely on the remedies

provided by the bill of lading required to be issued by the amendment. 514 F.Supp. at 583 (citing *Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co.,* 241 U.S. 190, 197, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1916)). In this case, plaintiff did not sign the bill of lading. The absence of the shipper's signature, however, does not necessarily prevent the bill of lading from binding the shipper. The shipper's signature on the bill of lading would be the most satisfactory evidence that the carrier had limited its liability pursuant to a written agreement as is required by section 10730(b)(1). *American Ry. Express Co. v. Lindenburg,* 260 U.S. 584, 591, 43 S.Ct. 206, 209, 67 L.Ed. 414 (1923). The Supreme Court in *Lindenburg* stated that "[i]t is sufficient if the shipper accepts the carrier's bill of lading without himself signing it. It becomes binding upon him by his acceptance, he being presumed to know and accept the conditions of the written bill of lading." *Id.*

In *W.C. Smith, Inc. v. Yellow Freight Systems, Inc.,* 596 F.Supp. 515 (E.D.Pa. 1983), the carrier had on file with the I.C.C. a tariff which provided that " '[i]f the consignor fails to declare a released value at the time of shipment, shipment will be subject to the lowest released value herein.' " 596 F.Supp. at 516. In *Smith,* the carrier maintained an approved rate schedule that provided four progressively lower rates in exchange for greater degrees of limitation upon its liability. The bill of lading expressly incorporated all tariffs that governed the shipment. The court held that, in failing to declare a released value in the blank spaces on the bill of lading, the shipper had chosen the lowest released value. *Id.* at 517. The court reached this conclusion, even though the released rates were not conspicuous on the face of the bill of lading, because the shipper was charged with knowledge of the applicable tariff provisions. *Id.*

In *Mechanical Technology, Inc. v. Ryder Truck Lines,* 776 F.2d 1085 (2d Cir.1985),

---

**1.** Section 11707 provides that a common carrier is liable for "actual loss or injury," 49 U.S.C. § 11707(a)(1), to the property it transports.

the carrier's tariff expressly provided that "failure to designate a rate results in a released rate of $5.00 per pound." *Id.* at 1087. In holding that the shipper effectively selected the lowest rate by failing to designate a rate, the court stated that "[w]hen a sophisticated shipper, using his own bill of lading form, leaves blank the space provided for declaring the released value of the goods, we will presume that he did so deliberately with full knowledge of the consequences under the applicable tariff." *Id.* at 1089.

The present case adds a different twist because here the carrier is attempting to shield itself from any liability. Defendant states that it is prohibited by its own tariff from accepting shipment of articles of antiquity or articles of extraordinary value unless the article is released to a value not exceeding five dollars per pound. The defendant's tariff does include a provision that "[a]rticles of extraordinary value will not be accepted for shipment ... [e]xcept ... [when] released in value ..." not exceeding five dollars per pound. (National Motor Freight Classification 100–K). Defendant argues that it is absolved from liability because of plaintiff's failure to state a declared value not exceeding five dollars per pound.

Defendant argues in the alternative that if it is not absolved from liability, then its liability should at least be limited to a released value of five dollars per pound. One of the problems with this argument is that the tariff does not have a provision such as the one in *Smith* which stated that a released value is automatically chosen if the shipper fails to declare a value. 596 F.Supp. at 517.

The court is unpersuaded by defendant's arguments. Limitations on liability are an exception to the general thrust of the Interstate Commerce Act placing on the carrier absolute liability for loss or damage of a shippers' goods. "Consequently, such arrangements must be carefully scrutinized and where they fail ... to fully comply with the provisions of the Carmack Amendment, it is clear they are ineffective to limit a carrier's liability." *Anton v. Greyhound Lines, Inc.*, 591 F.2d 103, 109 (1st Cir.1978).

The court does not believe that in this case the carrier can exclude liability on the basis that its tariff prohibited it from carrying antiques or goods of extraordinary value unless the shipper declared a released value not to exceed five dollars per pound. Although a carrier may impose reasonable requirements relating to the acceptance of goods for shipment, *Household Goods Carriers' Bureau v. Interstate Commerce Commission*, 584 F.2d 437, 439 (D.C.Cir.1978), it is possible that "carriers can so abuse a particular condition that it operates, not as a condition on acceptance but as a limitation on liability." *Id.* at 440. In *Railway Express Agency v. Hueber*, 191 S.W.2d 710 (Tex.Civ.App.1945), the court stated that "[w]e have not found, nor have we been cited to, any case holding that a provision in a uniform receipt that the carrier will not be liable for articles of unusual value unless listed on the receipt is a valid provision. In our opinion, it is an attempt on the part of a carrier to limit its liability in a manner which is positively prohibited by the Carmack Amendment." *Id.* at 712. In this case, as with the carrier in *Hueber*, the carrier did carry items of extraordinary value.

It is the court's further conclusion that defendant's liability cannot be limited to a released value not to exceed five dollars per pound. First, the tariff on file in this instance did not contain a provision that the shipper automatically selected a specified released value by not stating a declared value. *See, e.g.,* 596 F.Supp. at 516. Also, the shipper in this instance is not a sophisticated person in the business community or a commercial shipper, and she did not have actual knowledge of the tariff provisions.

In *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.*, 616 F.2d 619 (2d Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980), the court stated that a limitation of liability is not effective when the bill of lading does not specify either a reduced freight rate or the released value of the property. *Id.* at 626. In *Ruston*

*Gas Turbines, Inc. v. Pan American World Airways,* 757 F.2d 29 (2d Cir.1985), the shipper was held bound by the limitations of liability because it had actual knowledge of the tariff.[2] Judge Winter, in his concurring opinion in *Mechanical Technology, Inc. v. Ryder Truck Lines,* 776 F.2d 1085, 1089 (2d Cir.1985) (Winter, J. concurring) stated that these two cases "established a rule that when a bill of lading does not specify either a reduced rate or released value, and the shipper has no actual knowledge of the terms of the tariff, limitations of liability contained in the tariff are not effective." *Id.*

The tariff in *Mechanical Technology* provided that failure to designate a rate would result in a released rate of $5.00 per pound. The court held that, by leaving the spaces blank in the bill of lading, the shipper had effectively selected the lowest freight weight and its corresponding low level of liability. 776 F.2d at 1087. The court emphasized that it had not previously found that a shipper agreed to limit liability on the basis of constructive knowledge alone, but the court state that "we do not hesitate to reach this conclusion on the *specific facts* of this case." *Id.* at 1088 (emphasis added). The court stated that in this case the contract was negotiated between people of "at least equal economic stature and commercial awareness or acquity." *Id.* Also, the shipper was a commercial shipper. The shipper used its own bill of lading that incorporated the applicable tariff and provided for designation of a released rate. *Id.*

The facts of the present case are not in any way similar to those in *Mechanical Technology.* Here the shipper is a private citizen who was shipping an antique carpet for repair and cleaning. She used the bill of lading provided by the carrier, and she did not have actual knowledge of the tariff provisions. Even more compelling is the fact that the shipper explained to an employee of the carrier that she was shipping a very valuable oriental rug. He explained to her the procedure for declared value but assured her that it was not necessary to do that. He did not explain to her that the tariff provisions prevented the carrier from accepting for shipment items of extraordinary value unless the shipper released the article to a value not exceeding five dollars per pound.

This court concludes that the carrier has not effectively limited its liability. "The existence of a tariff is not in itself sufficient to limit liability." *Id.* This court refuses to hold that an unsophisticated, non-commercial shipper has limited liability on the basis of constructive knowledge alone. Instead, this court will follow the rule established by *Ruston* and *Mooney* that "when a bill of lading does not specify either a reduced rate or released value, and the shipper has no actual knowledge of the terms of the tariff, limitations of liability contained in the tariff are not effective." *Id.* at 1089. (Winter, J., concurring).

Under the Carmack Amendment a carrier may not exclude liability, and the court concludes that in this case the carrier has failed to effectively limit its liability under the Carmack Amendment. Accordingly, defendant's motion for summary judgment on this issue is DENIED, and plaintiff shall be GRANTED summary judgment on this issue. Because defendant has admitted that the rug is lost, the only issue remaining in this case is the amount of "actual loss or injury." 49 U.S.C. § 11707(a)(1).

---

2. The bill of lading provide that the goods were: RECEIVED, subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading," and further that "[u]nless a Greater Value is Declared Herein, the Shipper Agrees and Declares that the Value of the Property is Released to an Amount Not Exceeding $50 for Any Shipment of 100 Pounds or Less and Not Exceeding 50 Cents Per Pound for Shipments Weighing in Excess of 100 Pounds. 757 F.2d at 31.