**COMMODITIES RECOVERY CORPORATION, Plaintiff,**

v.

**EMERY WORLDWIDE, Defendant.**

Civ. A. No. 89–2480.

United States District Court, D. New Jersey.

Jan. 29, 1991.

As Amended March 6, 1991.

Elise R. Sloan, Klein Chapman, Clifton, N.J., for plaintiff.

William D. Bierman, Westwood, N.J., for defendant.

### OPINION

WOLIN, District Judge.

Before the Court is defendant's motion for summary judgment pursuant to Federal Rule 56. After reviewing the submissions of the parties and hearing oral argument, the Court finds that defendant is entitled to summary judgment for the reasons expressed below.

### I. BACKGROUND

On August 5, 1988, plaintiff Commodities Recovery Corporation ("Commodities") contacted Emery Worldwide ("Emery") to arrange for overnight shipping of a package valued at $42,000. A Commodities' employee spoke to an Emery representative who told her that Emery would accept a package valued at $42,000 and insure it for that amount for a price of $231.25 for

overnight delivery. Commodities filled out an Emery Air Waybill and stated in the Waybill that the declared value of the package was $42,000.[1] However, Commodities left blank the section on the bill for the description of the package's contents. In the afternoon of August 5, an Emery driver picked up Commodities' package. The package was never received at its intended destination in Miami, Florida and Commodities has brought this action to recover $42,000 from Emery.

The Emery Waybill states on the face of the bill, in bold print, that the shipment "is subject to the terms and conditions as set forth on the reverse side of this non-negotiable Air Waybill." The reverse side of the Air Waybill list the "Terms and Conditions of Contract." Item four in the "Terms and Conditions" section is entitled "Limitation of Liability." This item provides, in all capitals, "THE LIABILITY OF EMERY IS LIMITED TO $9.07 PER POUND, ... UNLESS A HIGHER DECLARED VALUE IS REQUESTED, AND THE FEES SET FORTH IN THE EMERY SERVICE GUIDE IN EFFECT ON THE DATE OF SHIPMENT FOR SUCH HIGHER DECLARED VALUE ARE PAID BY THE SHIPPER IN NO EVENT SHALL THE LIABILITY OF EMERY EXCEED THE DECLARED VALUE OF THE SHIPMENT OR THE AMOUNT OF LOSS OR DAMAGE ACTUALLY SUSTAINED, WHICHEVER IS LOWER."

Further below this statement in Item four of the "Terms and Conditions" section, is a statement in regular size type that provides: "Shipments containing items of extraordinary value including but not limited to drawings, paintings, sculptures, porcelain, ceramics, furs, jewelry, fur trimmed clothing, watches, gems, stones, money, bullion, currency, coins, trading stamps, or other extraordinary valuable items may not be acceptable or are acceptable subject to special limitations of liability as set forth in the Emery Service Guide in effect on the date of shipment." On page 4 of the Emery Service Guide, under

the bold faced heading "Shipments Not Acceptable," is a list of shipments that Emery will not accept for transportation "under any circumstances." Item F under this heading includes "Money, Currency, Bonds, Bills of Exchange, Deeds, Promissory Notes, Negotiable Securities and Stock Certificates." Item four of the terms and conditions, the limitation of liability section, states that Emery is not liable for any loss, damage, or non-delivery caused by the Shipper's violation of any of the terms or conditions contained in the Air Waybill.

Page five of the Emery Service Guide provides, under "Shipments Subject to Advance Arrangements," that any shipment having a declared or insured value exceeding $25,000 would only be accepted for carriage upon completion of "advance arrangements." Such advance arrangements are not further described anywhere in the guide.

Commodities did not possess a copy of the Emery Service Guide at the time that it arranged for the transportation of the package. However, the reverse side of the Air Waybill states that a copy of the service guide may be obtained from any Emery office or Emery's Headquarters in Wilton, Connecticut.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact, and once the moving party has sustained this burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir.1989).

1. The package contained $38,000 in U.S. currency which had been collected to pay for food supplies that were to be shipped to Panama.

The package was insured for $42,000 because any delay in arrival would represent a loss through spoilage of food.

A genuine issue is not established unless the evidence, viewed in a light most favorable to the nonmoving party, would allow a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Radich v. Goode,* 886 F.2d 1391, 1395 (3d Cir.1989). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Radich,* 886 F.2d at 1395. Whether a fact is material is determined by substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *United States v. 225 Cartons,* 871 F.2d 409, 419 (3d Cir.1989).

## B. *Validity of Air Waybill Contract*

As a preliminary matter, the Court notes that federal statutory and common law governs this case. *First Pennsylvania Bank v. Eastern Airlines, Inc.,* 731 F.2d 1113, 1115–16 (3d Cir.1984).

■ The Supreme Court has held that a bill of lading, such as Emery's Air Waybill, forms the basic contract for transportation and it binds the shipper and all connecting carriers. *Southern Pacific Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982). Thus, Emery's Air Waybill governs the rights and liabilities of the parties to this lawsuit.

Emery's Air Waybill plainly states that money and currency "may not be acceptable" for shipment. In addition, the Air Waybill incorporates the Emery Service Guide by reference. The Emery Service Guide explicitly includes currency as a "shipment not acceptable under any circumstances." Courts have recognized that a carrier may impose reasonable requirements relating to the acceptance of goods for shipment. *Household Goods Carriers Bureau v. Interstate Commerce Commission,* 584 F.2d 437, 439 (D.C.Cir.1978).

■ Commodities argues that it was not notified of these provisions for two reasons: 1) because the "Terms and Conditions of Contract" were listed on the reverse side of the Air Waybill which could only be read by tearing off the cover sheet from attached carbon copies below it, and 2) because Commodities was not provided with a copy of the Emery Service Guide. Regarding the first argument, the front side of Emery's Air Waybill states in boldface that the shipment is subject to the terms and conditions as set forth on the reverse side of the Air Waybill. The Court agrees that the reverse side of Emery's Waybill is difficult to read because one must tear to top sheet from perforations on both sides and separate it from the carbon copies in order to read the waybill's terms. However, Commodities had frequently used Emery to ship overnight mail for several years and would have had numerous receipts on which the terms and conditions could be read. The Court finds that the waybill provides sufficient notice to the shipper to read the reverse side of the bill.

Second, the terms and conditions listed on the reverse of the bill incorporate the terms of Emery's Service Guide by reference. At least two other courts have reached precisely the same conclusion. *Kansas State Bank & Trust Co. v. Emery Air Freight Corp.,* 656 F.Supp. 200, 205 (D.Kan.1987); *Hopper Furs, Inc. v. Emery Air Freight Corp.,* 749 F.2d 1261, 1264 (8th Cir.1984). The Court thus finds that the Emery Air Waybill, signed by Commodities, creates a valid contract which incorporates the Emery Service Guide.

■ Commodities also argues that Emery waived its right to object to Commodities' inclusion of currency in the package because it failed to inquire about the contents of the package and it validly accepted it for transport. In a similar case, another district court found otherwise. In *Angela Cummings, Inc. v. Purolator Courier Corp.,* 670 F.Supp. 92 (S.D.N.Y.1987), the waybill stated that "articles of extraordinary value," are limited to a maximum declared value of $500 and that the courier would not accept articles having an actual or declared value exceeding $25,000. *Id.* at 95. Plaintiff argued that defendant knowingly accepted an "article of extraordinary value" (jewelry) by accepting shipments valued at $25,000. *Id.* The court noted

that the contents of the packages were never described in the bill of lading and the plaintiff never told the courier what was in the packages. *Id.* Thus, the court concluded that the courier did not knowingly accept an "article of extraordinary value." Similarly, in this case, Commodities left blank the box for a description of the contents of the package. Nor did Commodities inform the courier that the package contained cash. Thus, Emery could not have knowingly accepted the currency in violation of the shipping agreement.

Commodities cites *Jones v. Yellow Freight System, Inc.,* 656 F.Supp. 550 (M.D.Ga.1987), to support its claim that Emery is liable for loss of the package. In *Jones,* the carrier accepted a valuable oriental rug for shipment. No declared or released value was given in the bill of lading. *Id.* at 551. The carrier argued that its tariff prohibited it from accepting "articles of extraordinary value" for shipment unless the shipper agrees to a released value of the goods not exceeding five dollars per pound. *Id.* at 553. The court found that the carrier's tariff was ineffective to discharge its liability for loss of the rug. The court found that this provision in the tariff was not a reasonable condition of acceptance of the goods but rather an attempt by the carrier to limit its liability in violation of the Carmack Amendment, 49 U.S.C. § 11707(c)(4). This case is distinguishable from Commodities' situation. Unlike the ambiguous tariff provision in *Jones,* referring to "articles of extraordinary value," the Emery service guide plainly stated that it would not accept cash for shipment "under any circumstances." Furthermore, the provision was incorporated in the bill of lading rather than only in the tariff on file with the I.C.C.

Finally, Commodities claims that the Court must determine whether it was a "sophisticated shipper," creating a material issue of fact about be charged with knowledge of the terms of the contract. The Court finds that the issue of whether Commodities was a "sophisticated shipper" is irrelevant in this case. Pure common·sense should put someone on notice that cash should not be sent in an express delivery envelope. If Commodities was uncertain about the appropriateness of sending cash via Emery, it could have asked an Emery employee if the shipment of cash was acceptable. Furthermore, Emery's Service Guide clearly states that such shipments are not acceptable.

 The Court finds that because Commodities breached the terms and conditions of the contract of transport, it may not recover the $42,000 declared value. The waybill states that Emery is not liable for the shipper's failure to comply with the terms of the contract. Summary judgment will be entered in favor of defendant.

## III. CONCLUSION

For the reasons expressed above, the Court will grant defendant's motion for summary judgment.