**UNITED PARCEL SERVICE, INC.,**
Appellant–Defendant,

v.

**Glenn M. SMITH, D.D.S.,**
Appellee–Plaintiff.

No. 05A02–9309–CV–491.

Court of Appeals of Indiana,
Second District.

Dec. 22, 1994.

Rehearing Denied Feb. 9, 1995.

Daniel C. Emerson, Jeffrey S. Koehlinger, Bose McKinney & Evans, Indianapolis, for appellant.

SULLIVAN, Judge.

United Parcel Service, Inc. (UPS) appeals a judgment in favor of Dr. Glenn M. Smith (Dr. Smith) in the amount of $992.72.[1] UPS presents three issues for review, which we restate as:

I.    whether the trial court erred by applying common law theories of standing instead of the Interstate Commerce Act, 49 U.S.C. §§ 10730 and 11707; and

II.   whether the trial court erred by applying common law theories of liability instead of the Interstate Commerce Act, thus finding that UPS was liable for more than the declared value of the shipped item.

We affirm.

This dispute arose when Dr. Smith shipped a piece of equipment called a Pro Tech Comfort Machine via UPS. The machine was shipped in interstate commerce to Illinois. Dr. Smith and UPS had not contracted for UPS to pick up packages directly from Dr. Smith's office. Accordingly, Dr. Smith delivered the package to Bruce & Bob's Auto Parts, (Bruce and Bob's), a local Montpelier store that did have a package-pickup agreement with UPS. Bob Roberts, owner of the auto-parts store, filled out the UPS bill of lading, but the UPS fee was paid by Dr. Smith. On the bill of lading, Bruce & Bob's is denominated as the shipper; Dr. Smith's name does not appear upon the document. The "Declared Value" column on the bill of lading was left blank. Printed on the bill of lading is an explanation that, unless a greater value is declared, the package is only insured in the amount of $100.00. If a greater value is declared, the shipper must pay an additional fee.

The package was lost and UPS wrote a check in the amount of $100.00 payable to "Bruce & Bob's Auto Parts". The check was not cashed.[2] Unsatisfied with the $100.00 payment, Dr. Smith brought suit for the full value of the machine.

At trial, Bob Roberts (Roberts) testified that the UPS driver who serviced Bruce & Bob's referred people who wished to send packages via UPS to the autoparts store for package pick-up. Roberts testified that the driver informed him that he could ship packages for others so long as the return address upon the package was Bruce & Bob's. Roberts testified that he knew of several other Montpelier businesses which shipped packages via UPS on behalf of other people, and that a person could call the UPS customer service number and be advised of a location in the area from which a package could be sent via UPS, e.g., a Marsh supermarket.

The trial court entered findings of fact and conclusions of law, stating that Dr. Smith did have standing to sue and that UPS's liability limitation provision was ineffective. Specifically, the trial court found that in order to increase its business, UPS encouraged small

---

1. The court also awarded Smith court costs in the amount of $30.00. The judgment was entered by Judge Forcum, the regular judge of the court. Thereafter, the judgment was set aside by Special Judge Culver, but an identical judgment was entered by Judge Culver following a new trial.

2. At trial, Bob Roberts agreed to endorse the check over to Dr. Smith upon resolution of this case.

businesses such as Bruce & Bob's to ship packages on behalf of others. In essence, the trial court found that Bruce & Bob's was acting as an extension of UPS in shipping Dr. Smith's package. The court found:

"there is no evidence whatsoever that United Parcel Service, Inc. properly trained the employees of Bruce & Bob's Auto Parts or advised them as to explaining the limitation of liability in the declared valued provisions.... United Parcel Service, Inc. should be estopped from raising the released value as a limitation of liability in circumstances where they are deriving additional business from an informal symbiotic relationship with shippers that have no training, interest or instruction in advising potential customers on the limitation of liability." Record at 75–76.

The trial court held in favor of Dr. Smith for the full value of the lost machine, $995.00.

## I. *Preemption*

UPS argues that the trial court applied common-law legal doctrines which have been preempted by federal law. Specifically, UPS argues that the trial court applied state law in determining that Dr. Smith had standing to bring suit, and in determining that UPS was liable for an amount greater than the coverage limitation provided in the shipping document.[3]

■■■ UPS is correct in its contention that 49 U.S.C. § 10101 *et seq*, the Interstate Commerce Act, and specifically those portions known as the Carmack Amendment,[4] preempt all state regulation of interstate ground shipments. As early as 1913, the United States Supreme Court held, "the legislation *supersedes all the regulations and policies of a particular State upon the same subject....*" *Adams Express Co. v. Croninger* (1913) 226 U.S. 491, 505, 33 S.Ct. 148, 152, 57 L.Ed. 314. Moreover, the Carmack Amendment provides the exclusive remedy for lost, delayed, misdelivered, or damaged

goods shipped in interstate commerce. Because Congress has preempted the field, a shipper may not "resort to any right of action against such a carrier conferred by existing state law." 226 U.S. at 507, 33 S.Ct. at 152.

We will address each preemption contention separately.

## II. *Standing*

■■■ The trial court found that Dr. Smith was the shipper of the item "for the reason that the Plaintiff had the economic interest in delivery of the item and paid the amount to UPS for the delivery service." Record at 37.[5] UPS argues that Bruce & Bob's entered into the contract with UPS, not Dr. Smith, and that according to federal law, only Bruce & Bob's may sue upon the contract. Specifically, UPS points to the language of the code which states:

"A common carrier ... shall issue a receipt or bill of lading for property it receives for transportation.... That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading." 49 U.S.C. § 11707(a)(1) (Lawyer's Ed. Supp.1994).

The question of standing usually arises where the owner of the package contacts a middleman to arrange for shipment. The middleman, commonly known as a freight forwarder, does not perform the shipping service himself. Rather, he contracts with a carrier, such as UPS, to deliver the package. UPS argues that Bruce & Bob's was, in essence, a freight-forwarder for Dr. Smith and points to *Pennsylvania R.R. Co. v. Olivit Bros.* (1917) 243 U.S. 574, 37 S.Ct. 468, 61 L.Ed. 908, for the proposition that only the freight-forwarder, and not the actual owner of the goods, may sue upon the shipping contract. In *Pennsylvania R.R. Co.,* the freight forwarder brought suit against the carrier for watermelons delivered in a damaged condition. At that time, the Carmack

---

3. This insurance coverage limitation is referred to as the "released value."

4. The original Carmack Amendment is now recodified at 49 U.S.C. § 11707. For a detailed history of the various codifications of the Amendment, see *Co-operative Shippers, Inc. v. Atchison,*

*Topeka and Santa Fe Ry. Co.* (1985) N.D.Ill., 613 F.Supp. 788, 790, n. 2.

5. This finding is from Judge Forcum's findings, which were specifically incorporated by Judge Culver into his own findings and conclusions.

Amendment imposed liability in favor of the "lawful holder" of the bill of lading. 243 U.S. at 583, 37 S.Ct. at 471. The carrier argued that only the owner of the goods was damaged by the negligent shipping and thus was the only party with standing to sue. The Supreme Court held that a "lawful holder" of the bill of lading is not necessarily the owner of the goods, but also includes the freight-forwarder who was a party to the contract with the carrier. UPS urges us to interpret *Pennsylvania R.R. Co.* as holding that *only* the freight-forwarder has standing to sue. We decline to do so.

In *Chicago, Milwaukee, St. Paul & Pac. R.R. Co. v. Acme Fast Freight, Inc.* (1949) 336 U.S. 465, 487 n. 27, 69 S.Ct. 692, 703 n. 27, 93 L.Ed. 817, the Court stated:

> "Of course shippers by freight forwarder have for many years been permitted to sue underlying carriers for loss or damage occasioned by the latter. (Citation omitted). *Great Northern Ry. Co. v. O'Connor* (1914) 232 U.S. 508 [34 S.Ct. 380, 58 L.Ed. 703]. [Citation omitted]. The theory of these actions was that the shipper is the undisclosed principal of its agent, the forwarder, in the latter's contract with the carrier." *Id.*

In *O'Connor, supra,* the case referred to in *Acme Fast Freight,* the owner of the goods brought direct suit against the carrier. 232 U.S. 508, 34 S.Ct. 380. In applying the Carmack Amendment, the Supreme Court allowed the owner to recover the released value of the goods without even discussing standing.

At least two federal courts interpreting this line of Supreme Court cases have held that the owner of the goods has a direct cause of action against the carrier. *See Gulf & Western Indus. v. Old Dominion Freight Line* (1986) M.D.N.C., 633 F.Supp. 688; *Agricultural Lands, Inc. v. Panhandle & Santa Fe Ry. Co.* (1945) W.D.Miss., 60 F.Supp. 108. Moreover, several federal cases applying the Carmack Amendment have allowed, without

comment, the owner of the goods to sue the carrier. *See Feinberg v. Railway Express Agency* (1947) 7th Cir., 163 F.2d 998, *cert. denied* (1948) 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417; *Boeing Co. v. U.S.A.C. Transport, Inc.* (1976) 9th Cir., 539 F.2d 1228; *Burnell v. Butler Moving & Storage* (1993) N.D.N.Y., 826 F.Supp. 65.

In *Agricultural Lands, Inc., supra,* the court applied *Pennsylvania R.R., supra,* holding that an owner could prove he or she was the lawful holder of the bill of lading "by proving the agency of those who made the shipment and in whose name the bill of lading was drawn." 60 F.Supp. at 110. Here, UPS argues that Bruce & Bob's "was acting exclusively as Dr. Smith's agent in arranging for shipment of his package with UPS...." Brief of Appellant at 11. By conceding that Bruce & Bob's was acting as Dr. Smith's agent, UPS concedes that Dr. Smith is the "lawful holder" of the bill of lading as required by the Carmack Amendment and as defined in *Agricultural Lands, Inc.*

■ When we review a trial court's judgment based upon findings of fact, the findings must be adequate to support the decision. *Donavan v. Ivy Knoll Apartments Partnership* (1989) 4th Dist. Ind.App., 537 N.E.2d 47, 50. A judgment is clearly erroneous when the conclusions are not supported by the findings; findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Donavan, supra.*

Here the trial court found that Bruce & Bob's was, in essence, acting as UPS's agent, not Dr. Smith's. There is evidence in the record to support this finding. Therefore, it is not clearly erroneous. However, even under UPS's assertion that Bruce & Bob's was acting as Dr. Smith's agent, the trial court's judgment that Dr. Smith had standing to sue is supported by authority and is not clearly erroneous. Although UPS points to several cases holding to the contrary,[6] the great

---

6. *See, e.g., Monsour v. Curly* (1988) Ga., 1989 Fed.Carr.Cas. (CCH) ¶ 83,481; *Executone Central Idaho v. United Parcel Service* (1989) Utah Cir. Ct., 1989 Fed.Carr.Cas. (CCH) ¶ 83,499; *Thompson H. Rouw Co.* (1951) Tx.App., 237 S.W.2d 662; *Foley v. American Ry. Express Co.* (1924) 69 Cal.App. 669, 232 P. 169.

Only one of these cases is a federal case. The rest are state interpretations of federal law. We will defer to the federal authorities cited *supra.*

weight of authority supports the trial court's judgment.

### III. *Damages*

UPS argues that the trial court applied a common-law negligence theory in holding UPS liable for the entire value of the machine instead of the released value of $100.00.

The Carmack Amendment imposes liability upon carriers for the full value of goods lost or damaged during shipment, but permits carriers to limit their liability pursuant to 49 U.S.C. § 10730.[7] *Jones v. Yellow Freight System, Inc.* (1987) M.D.Ga., 656 F.Supp. 550, 552. Where a carrier is negligent in handling a package, the shipper may only rely upon the remedies provided by the bill of lading. *Id.* "[A] shipper by carrier cannot enlarge its rights by calling its action one for negligence when it arises under a contract of carriage." *Gulf & Western Indus., supra,* 633 F.Supp. at 693.

However, the limitation of liability provisions are an exception to the "general thrust" of the Carmack Amendment and will be carefully scrutinized. 656 F.Supp. at 553. Accordingly, the carrier bears a "substantial burden" to prove that it (1) maintain[ed] a tariff according to Interstate Commerce Commission guidelines; (2) that the shipper agreed to limit liability; (3) that the shipper was given "a reasonable opportunity to choose between two or more levels of liability"; and (4) that the carrier issued a receipt or bill of lading prior to shipment. *Bio–Lab, Inc. v. Pony Express Courier Corp.* (1990) 11th Cir., 911 F.2d 1580, 1582.

In further discussing the burden borne by the carrier, courts have stated, "There must be an absolute, deliberate and well-informed choice by the shipper." *Anton v. Greyhound Van Lines, Inc.* (1978) 1st Cir., 591 F.2d 103, 108. "[O]nly by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained." *New York, New Hampshire & Hartford Ry. Co. v. Nothnagle* (1953) 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500. "A fair opportunity means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice." *Hughes v. United Van Lines, Inc.* (1987) 7th Cir., 829 F.2d 1407, 1419, *cert. denied* (1988) 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248.

In *Jones, supra,* the carrier lost an oriental rug valued at $20,000.00 to $25,000.00. 656 F.Supp. at 551. The owner, an unsophisticated shipper, told the carrier's employee that the rug was very valuable. The employee explained the procedures for declared value, but assured the shipper that she did not need to follow these procedures as the carrier was very reliable. As is the case here, the owner left the declared value column on the carrier's form blank. Pointing to the facts that the shipper was unsophisticated and that the carrier had assured the owner of the carrier's reliability, the court refused to enforce the liability limitation provision of the contract. 656 F.Supp. at 554. *Accord Bio-Lab, Inc., supra* (limitation of liability provision is ineffective where carrier accepted shipment, crossed out the declared value of $10,789.77, replaced value with $250.00, and returned altered bill of lading to shipper); *Co-operative Shippers, Inc., supra* n. 5, (liability limitation provision ineffective where carrier's bill of lading did not comply with statute, thus impeding deliberate choice by shipper); *Acro Automation Sys. Inc. v. Iscont Shipping Ltd.* (1989) D.Md., 706 F.Supp. 413 (liability limitation provision ineffective where carrier did not write contract until after goods were delivered, carrier signed portion of contract indicating delivery of goods, but did not sign liability limitation provision).

Here, the trial court found that Bruce & Bob's was acting on behalf of, and

---

UPS cites *Agricultural Lands, Inc. supra,* as holding that only a freight forwarder may sue. We disagree. *See* discussion *supra,* p. 7.

7. "[T]he liability of the carrier ... for such property is limited to a value established by written declaration of the shipper or by written agreement between the carrier ... and shipper...." 49 U.S.C. § 10730(b)(1) (Lawyers Ed.Supp. 1994).

at the behest of, UPS. The evidence was uncontroverted that Roberts, not Dr. Smith, filled out the bill of lading. The court further found that UPS had not trained the employees of Bruce & Bob's in advising customers of the liability limitation portion on the bill of lading. These factual findings are supported by the record, and support an inference that UPS did not meet its burden to prove that Dr. Smith was given a "reasonable notice of the liability limitation" and an "opportunity to obtain information necessary to making a deliberate and well-informed choice." *Hughes, supra,* 829 F.2d at 1419. Given these findings and inferences, the trial court's judgment that UPS did not effectively limit its liability is not clearly erroneous.

■■■ Where a shipper has failed to effectively limit its liability, the liability imposed by the Carmack Amendment applies. *Jones, supra,* 656 F.Supp. at 552. In such event, the shipper is liable for the full value of the damaged or lost goods. The trial court did not err in entering judgment for Dr. Smith for the full value of the Pro Tech Comfort Machine.

The judgment is affirmed.

FRIEDLANDER and CHEZEM, JJ., concur.