**MAYFLOWER TRANSIT, INC.,**
Appellant–Defendant,

v.

**Leo Oleta DAVENPORT,**
Appellee–Plaintiff.

No. 71A03–9810–CV–448.

Court of Appeals of Indiana.

Aug. 18, 1999.

---

Jeffrey S. Wrage, Kopka, Landau & Pinkus, Crown Point, Indiana, Attorney for Appellant.

Edward C. Hilgendorf, South Bend, Indiana, Attorney for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Lea Oleta Davenport filed a Statement of Claim against Mayflower Transit Co., Inc. ("Mayflower") in the Small Claims Division of St. Joseph Superior Court alleging that carrier negligence resulted in damage to her furniture. After a hearing, the trial court awarded Davenport $2,000.00 in equity for water damage to her household goods.

We affirm.

### ISSUES

In this appeal from a small claims judgment, Mayflower presents three issues for our review, which we restate as:

1. Whether Davenport's state law negligence claim is preempted by the Carmack Amendment to the Interstate Commerce Act.

2. Whether Mayflower took the steps necessary to limit its liability under the Carmack Amendment.

3. Whether the trial court erred when it granted Davenport equitable relief.

### FACTS AND PROCEDURAL HISTORY

In February of 1997, Davenport hired Jordan's Mishawaka Transfer, Inc., a local Mayflower agent, to transport household furniture from Elkhart, Indiana, to Pinellas Park, Florida.[1] Mayflower gave Davenport a replacement value estimate and informed her that a lower valuation rate was available. Davenport, an infrequent shipper, asked a Mayflower agent what was the usual and reasonable amount of liability limitation selected and then chose the sixty cents per pound option recommended. Davenport signed the Bill of Lading just prior to shipment on February 19, 1997.

The moving truck leaked en route, which caused water damage to Davenport's furniture, including antiques. Davenport filed a claim with Mayflower for damage to nine of fifty-four items transported. Mayflower offered Davenport $333.00 based upon the liability limitation of sixty cents per pound per article as stipulated in the Bill of Lading.

Davenport refused the offer and filed a *pro se* small claims action against Mayflower for "negligence of the moving company to provide a van free of leaks." Davenport requested $2,990.00 in damages. At trial, Mayflower argued that under the Carmack Amendment to the Interstate Commerce Act,[2] Davenport had selected liability coverage in the Bill of Lading which prohibited her from recovering damages beyond $333.00. The trial court held that Davenport was entitled to recover $2,000.00 in equity. Mayflower now appeals.

### DISCUSSION AND DECISION

#### Standard of Review

 Our standard of review is particularly deferential in small claims actions, where "the trial shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A); *City of Dunkirk Water & Sewage Dep't v. Hall*, 657 N.E.2d 115, 116 (Ind.1995). Nevertheless, the parties in a small claims court bear the same burdens of proof as they would in a regular civil action on the same issues. Ind. Small Claims Rule 4(A). While the method of proof may be informal, the relaxation of evidentiary rules is not the equivalent of relaxation of the burden of proof. *Eichler v. Scott Pools, Inc.*, 513 N.E.2d 665, 667 (Ind.Ct.App.1987). It is incumbent upon the party who bears the burden of proof to demonstrate that it is entitled to the recovery sought. *Id.*

 Mayflower appeals from a general judgment, which may be affirmed upon any legal theory supported by the evidence.

---

1. Jordan's Mishawaka Transfer, Inc. contracted with Davenport and provided initial packing services. Mayflower, however, is the carrier of record who was responsible for providing the transportation services to Davenport and for "provid[ing] carrier's liability and or added valuation." Mayflower does not dispute its liability, but contends that its liability is limited by the Bill of Lading. *See* Issue Two, *infra.*

2. *See* 49 U.S.C. § 14706.

*Board of Comm'rs of Delaware County v. Lions Delaware County Fair, Inc.*, 580 N.E.2d 280, 283 (Ind.Ct.App.1991). Mayflower carried the burden of proof on its affirmative defense of limited liability under the Carmack Amendment and also appeals from a negative judgment on that issue. Thus, Mayflower must show that the judgment is contrary to law. A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is opposite from that reached by the trial court. *Id.*

### Issue One: Application of the Carmack Amendment

■■■ Mayflower first argues that Davenport's state law negligence claim is preempted by the Carmack Amendment and, therefore, that the trial court erred when it failed to dismiss her claim. The Carmack Amendment provides the exclusive remedy for damaged goods shipped in interstate commerce, and because Congress has preempted the field, a shipper may not resort to any right of action against a carrier existing under state law. *United Parcel Serv., Inc. v. Smith,* 645 N.E.2d 1, 3 (Ind.Ct.App.1994). It is clear that when damages are sought against a carrier for negligent performance of an interstate contract of. carriage, the Carmack Amendment governs. *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1414 (7th Cir. 1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *American Synthetic Rubber Corp. v. Louisville & N.R.R. Co.,* 422 F.2d 462, 468 (6th Cir.1970). In this case, Davenport asserted a claim for carrier negligence, alleging damage to household furniture. It follows that Davenport's claim is preempted by the Carmack Amendment.

3. 49 U.S.C. § 14706 provides in part:
 (a)(1) A common carrier ... subject to the jurisdiction of the Interstate Commerce Commission ... shall issue a receipt or a bill of lading for property it receives for transportation.... That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by ... the carrier over whose line or route the property is transported in the United States.

■■■ On appeal, Mayflower contends, in effect, that simply because its liability to Davenport is a question of federal law, Davenport failed to state a claim upon which relief can be granted. We cannot agree. The United States Supreme Court has determined that under federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes a prima facie case when he shows delivery in good condition, arrival in a damaged condition, and the amount of damages. *Missouri Pacific R.R. v. Elmore & Stahl,* 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). Davenport has stated a claim for relief. While Davenport's recovery might be limited by the liability scheme of the Carmack Amendment incorporated into the shipping contract, it was Mayflower's burden to show not only that the Carmack Amendment applies but also that it had complied with the Carmack Amendment in this case.

### Issue Two: Compliance with the Carmack Amendment

Mayflower contends that its liability to Davenport is limited by the Bill of Lading to sixty cents per pound per article. As a result, Mayflower argues that the trial court erred when it awarded Davenport more than $333.00 in damages. We must disagree.

■■■ The Carmack Amendment imposes liability upon carriers for the full value of goods damaged during shipment but permits carriers to limit their liability. *United Parcel Serv.,* 645 N.E.2d at 5 (citing 49 U.S.C. § 10730, recodified at 49 U.S.C. § 14706(a)(1) and (f)).[3] Limitations on liability are an exception to the general thrust of the Interstate Commerce Act, which places on the carrier absolute liability for damage to a shipper's goods. *Id.* The purpose of this

* * *

(f) A carrier ... subject to jurisdiction under chapter I or III of chapter 135 may petition the Board to modify, eliminate, or establish rates for the transportation of household goods under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper or a written agreement.

exception is to enable interstate carriers to assess their risks and predict their potential liability for damages. *Hughes,* 829 F.2d at 1407; *Counter v. United Van Lines, Inc.,* 935 F.Supp. 505, 507 (D.Vt.1996).

■■■■■ Because the public policy underlying the Carmack Amendment is to hold carriers liable for actual injury to goods shipped, arrangements attempting to limit liability will be strictly construed against the carrier. *Anton v. Greyhound Van Lines, Inc.,* 591 F.2d 103, 109 (1st Cir.1978); *Chandler v. Aero Mayflower Transit Co.,* 374 F.2d 129, 135 (4th Cir.1967). There are four steps a carrier must take to limit its liability under the Carmack Amendment: (1) maintain a tariff according to Interstate Commerce Commission guidelines; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to shipment. *Hughes,* 829 F.2d at 1415. The carrier bears the "substantial burden" of establishing that its liability is limited. *Bio–Lab, Inc. v. Pony Express Courier Corp.,* 911 F.2d 1580, 1582 (11th Cir.1990). If the carrier fails to demonstrate that it effectively limited its liability under the Carmack Amendment, the shipper is entitled to her "actual loss or injury to property." *Jones v. Yellow Freight Sys., Inc.,* 656 F.Supp. 550, 552 (M.D.Ga.1987).

■■■■■ First, Mayflower offered no evidence that it maintained a tariff in compliance with Surface Transportation Board[4] tariff regulations for carriers of household goods.[5] As we have noted, the carrier must maintain a valid tariff that makes a limited liability rate and an unlimited liability rate available to the shipper. Mayflower maintains that it need not prove compliance with the tariff because Davenport does not dispute its validity. While it seems unlikely that a carrier of Mayflower's prominence would not maintain such a tariff, we cannot make that assumption. The carrier, not the shipper, bears the burden of proving that it limited its liability.

*See Bio–Lab,* 911 F.2d at 1582. Mayflower did not show that it maintained a valid tariff and, thus, did not prove the first step necessary for a valid liability limitation.

■■■■■ Mayflower also failed to present evidence that Davenport had a fair opportunity to choose between a higher and lower liability level. The federal courts which have considered what constitutes a "fair opportunity" have been unable to agree on a single, bright-line test. *See Hollingsworth & Vose Co. v. A–P–A Transp. Corp.,* 158 F.3d 617, 619 (1st Cir.1998) (a continuing controversy has developed about how to decide whether there has been a "fair opportunity"). Generally, a "fair opportunity" requires that the shipper have both reasonable notice of the liability limitation and an opportunity to obtain information necessary to make a deliberate and well-informed choice. *Hughes,* 829 F.2d at 1419 (citing *Anton,* 591 F.2d at 108). On this issue, Mayflower relies heavily on the Bill of Lading, but we are unable to assess the sufficiency of the liability limitation provision because relevant portions of the Bill of Lading exhibit in the record are illegible. It is the appellant's duty to present an adequate record for review. *Sanders v. Carson,* 645 N.E.2d 1141, 1145 (Ind.Ct.App.1995). The Rules of Appellate Procedure do not require that we decipher illegible photocopies. *See Silverthorne v. King,* 179 Ind.App. 310, 385 N.E.2d 473, 476 (1979). Mayflower did not provide an adequate record of the Bill of Lading on appeal.

■■■■■ At common law, one who signs a contract in the absence of fraud or deceit cannot avoid the contract on the grounds that he did not read it or that he took someone else's word as to what it contained. *Chandler,* 374 F.2d at 136. Ordinarily, under the law of contracts, a party is responsible for what he or she signs, and a shipper is charged with knowledge of filed tariffs. *See Hollingsworth,* 158 F.3d at 620. The Carmack Amendment, however, places an affirmative duty upon the carrier to ensure that

---

4. The Surface Transportation Board is the successor to the Interstate Commerce Commission. *See* ICC Termination Act, Pub.L. No. 104–88, § 201, 109 Stat. 803, 932–934 (1995).

5. Tariff requirements for household goods carriers are codified at 49 U.S.C.A. § 13702(a)(c) (1995); *see also* 49 C.F.R. § 1310 (1997).

the shipper is adequately informed of the breadth and consequences of the contract terms. *See Hughes,* 829 F.2d at 1419. For example, federal regulations require carriers who transport household goods in interstate commerce to furnish informational publications to the prospective individual shipper explaining the procedures and consequences of declaring a value for the shipper's goods.[6] *Id.* at 1423. There is no evidence that Mayflower provided those publications to Davenport. Davenport testified that a Mayflower agent told her that most shippers chose the sixty cents per pound option, but Mayflower offered no testimony or other evidence that it met its affirmative duty to inform her adequately of the contract terms.

Further, any limitation of liability must be brought to the attention of the shipper before the contract is signed, and the shipper must be given a choice to contract with or without the limitation of liability in the movement of her goods. *Chandler,* 374 F.2d at 137. Mayflower contends that an estimate provided Davenport before she signed the Bill of Lading informed her of her liability options. The legible portions of the written estimate provided in the record, however, contain no information related to liability. Again, we cannot make assumptions about matters not in the record. *See Ohio Cas. Ins. Co. v. Ramsey,* 439 N.E.2d 1162, 1169–70 (Ind.Ct. App.1982) (citing Ind. Appellate Rule 7.2(B) and (C)). Mayflower has not shown that Davenport had a "fair opportunity" to choose between liability levels and an opportunity to obtain the information necessary to make a deliberate and well-informed choice. Consequently, Mayflower has not met its burden on this step.

■ It is well settled that in order to prevail, a carrier must do more than simply plead the Carmack Amendment. The carrier must demonstrate that it has limited its liability in the manner prescribed by law.

Here, Mayflower failed to prove that it had taken all of the steps necessary for a valid liability limitation under the federal statute and applicable regulations. We conclude that Mayflower did not carry its burden of proof.

### Issue Three: Equitable Remedy

■ Finally, we address Mayflower's contention that the small claims court erred when it went outside the Bill of Lading and awarded Davenport $2,000.00 based on principles of equity.[7] Where there is an adequate remedy at law, equity will not assume jurisdiction. *Tri–Professional Realty, Inc. v. Hillenburg,* 669 N.E.2d 1064, 1070 (Ind.Ct. App.1996), *trans. denied.* Here, there is no indication that Davenport's remedy at law was inadequate. The Carmack Amendment provides that the shipper is entitled to recover the "actual loss or injury to property." *See* 49 U.S.C. § 14706(a)(1). To the extent that the trial court relied on equity, it was error.

■ Nonetheless, errors which do not affect the substantial rights of the parties should be disregarded. Ind. Trial Rule 61. In this case, the amount the trial court awarded Davenport was supported by the evidence. Replacement and repair estimates presented by both parties at trial ranged from $2,455.00 to $5,365.00. While the $2,000.00 award is improper as an equitable remedy, it is a proper money judgment for actual damages under the Carmack Amendment and will not be disturbed.

Affirmed.

GARRARD, J., and KIRSCH, J., concur.

6. More specifically, prior to the execution of an order for shipment of household goods, every motor common carrier must furnish to the prospective individual shipper: (1) Publication OCE–100, *Your Rights and Responsibilities When You Move;* (2) a summary of any dispute settlement program in which the carrier participates; (3) a copy of Form OCE–101, *Annual Performance Report,* if the carrier completes part B of that form; and (4) a written description of the customer complaint and inquiry handling procedures of the carrier. 49 C.F.R. § 375.2 (1997).

7. The trial court declared, "I'm going to go outside the scope of your contract because equity dictates it."